UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO. 05- 30022-KPN

ALL STATES ASPHALT, INC. AND
NEW ENGLAND EMULSIONS CORP.,

                    Plaintiffs

v.

FIREMAN'S FUND INSURANCE
COMPANY,

                    Defendant

**COMPLAINT AND REQUEST FOR**
**TRIAL BY JURY**

## NATURE OF CLAIM

1.     Plaintiffs seek payment to recover compensatory, consequential and punitive

damages under a property damage insurance policy where Defendant, the Plaintiffs'

insurer under said Policy, has refused to acknowledge the Plaintiffs' claim of loss under

said policy, and, as a result, also has failed to make payment thereunder, both as

required by law and under the policy.  The Plaintiffs seek to recover damages and the

costs of suit, including reasonable attorneys' fees for breach of contract, deceit, violation

of M.G.L. c. 93A, violation of obligation of good faith and fair dealing and estoppel due

to the conduct of the Defendant, Fireman's Fund Insurance Company.

## PARTIES, JURISDICTION AND VENUE

2.     The Plaintiff, All States Asphalt, Inc. (hereinafter "ASA") is a corporation duly

organized and existing under the laws of the Commonwealth of Massachusetts, with a

principal place of business  at Sunderland, Franklin County, Massachusetts.



1

3.    The Plaintiff, New England Emulsions Corp. (hereinafter "NEE"), is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with its executive offices in Sunderland, Franklin County, Massachusetts.

4.    The Defendant is a corporation duly organized and existing under the laws of the State of California, and does business as a licensed insurance company in the Commonwealth of Massachusetts.

5.    This action is of a civil nature involving, exclusive of interest and costs, a sum in excess of $75.000.00.  Every issue of law and fact is wholly between citizens of different states.

6.    This Court has subject matter jurisdiction pursuant to 28 USC 1332(a)(1).

7.    Venue is proper in the Western Division of this District pursuant to 28 USC 1391(a)(2) and local Rule 40.1(D)(1)(c) of the United States District Court for the District of Massachusetts.

## FACTS COMMON TO ALL COUNTS

8.    On April 1, 2001, the Defendant issued its policy #MZI-97241415 (the "policy"), in favor of ASA and NEE, et als, insuring the Plaintiffs as named insureds against losses to Plaintiffs' personal property.  (See Exhibit "A.")

9.    While the policy remained in full force and effect, the Plaintiff, NEE, on July 3, 2003, suffered a property damage loss to one of its petroleum product storage tanks occasioned by an explosion thereto, ("casualty").

10.    The said storage tank was an insured risk under the policy for:  (i) its full replacement value; (ii) all related costs in connection with said casualty; as well as (iii)

replacement thereof and delivery to NEE's designated premises, (collectively, "damages").

11.    Thereafter, the Plaintiffs, by their insurance agent, gave timely oral notice of said casualty to the Defendant, followed by a formal Property Loss Notice on July 17, 2003, by said agent to the Defendant, (the "loss").  (See Exhibit "B.")

12.    On multiple occasions thereafter, over a period exceeding one year from the date of casualty and loss, through the fall of 2004, the Plaintiffs, by their said agent, made repeated unsuccessful requests of the Defendant for assurance as to the Defendant's acceptance of the Plaintiffs' loss, as well as initiation of adjustment procedures to quantify said loss and make payment to the Plaintiffs, all as required by the policy.

13.    In early November 2004, the Plaintiffs' said agent advised the Plaintiffs that the Defendant has finally contacted him with oral advice that the Defendant would "shortly" issue a letter declining coverage.

14.    At the instruction of the Plaintiffs, its said agent thereupon redoubled his efforts, in further oral contacts with the Defendant's agents, to have it accept the loss and make payment therefore, or in the alternative, to at least tender the alleged declination letter, without success.  The Defendant continued inexplicably to fail to ever respond to these further entreaties of the Plaintiffs' agent.

15.    On November 15, 2004, the Defendant having failed to have either accept or decline the insured loss, the Plaintiffs, by their counsel, wrote to the Defendant making demand for its acceptance of the loss and advising, *inter alia*, that the Defendant's inexplicable failure to have ever responded to the Plaintiffs' loss constituted a clear and unambiguous breach of the policy, as well as giving rise to practices permitting the

3

Plaintiffs to recover punitive sanctions for multiple unfair claims settlement practices and deceptive trade practices, pursuant to M.G.L. Chapters 93A and 176D. (See Exhibit "C.")

16.    At all times since the Plaintiffs' counsel's said demand letter of November 15, 2004, the Defendant has continued, without lawful right, in its unabated, willful and intentional failure to ever formally respond to the Plaintiffs or their counsel as to the Plaintiffs' timely reported casualty and loss to it under the policy, or all follow-up requests by Plaintiffs' said agent, *supra*, resulting in the Plaintiffs: (i) being deprived of an installed replacement storage tank, in the NEE facility, to a present cost of $123,500.00 (and increasing by the passage of time); as well as (ii) lost profits to the Plaintiffs, both suffered and continuing, as a result of the unavailability of a timely replacement storage tank.

17.    Rather, the single anecdotal indicator of Defendant's possible future refusal to insure the loss only occurred after January 13, 2005, *a time in excess of five hundred and forty-four (544) days* from the date that the Plaintiffs first advised the Defendant of the said loss, wherein the Plaintiffs' agent received an apparently gratuitous informational fax of a draft of an unsigned letter purportedly declining coverage for the Plaintiffs' loss. (See Exhibit "D.")

18.    At all times, the Plaintiffs have taken all reasonable and necessary steps to fully comply with the terms of the said policy and to seek performance under the policy by the Defendant.

## COUNT I
### (Breach of Contract)

19.    Paragraphs 1 through 18 are incorporated herein by reference, as if restated.

20.    The conduct of the Defendant described above constitutes a breach of its contract with the Plaintiffs pursuant to said policy.

21.    As a result of the Defendant's breach, the Plaintiffs have been and continue to be damaged in an amount to be determined at trail.

## COUNT II
### (Deceit)

22.    Paragraphs 1 through 21 are incorporated herein by reference, as if stated.

23.    The Defendant willfully and intentionally failed to honor its contractual duties to the Plaintiffs, pursuant to the policy, to: (i) make timely reply to the Plaintiffs' claim of loss; (ii) to thereupon require a Proof of Loss if deemed necessary by it in order to evaluate entitlement to payment(s) under the policy; (iii) to make payment for the loss; or (iv) to timely decline to pay the loss for reasons permitted by the policy.

24.    That such failure by the Defendant to properly respond in any manner to the Plaintiffs' claim of loss constitutes material representations of fact under which the Plaintiffs had been induced to enter into the said policy with the Defendant by virtue of their reliance upon its express assurances of timely response and notice to them regarding any loss.

25.    As a result of the said deceit by the Defendant, the Plaintiffs have been and continue to be damaged in an amount to be determined at trial.

## COUNT III
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

26.    Paragraphs 1 through 25 are incorporated by reference, as if restated.

27.    The said policy issued by the Defendant to the Plaintiffs contains implied covenants of good faith and fair dealing requiring that the Defendant not deprive the Plaintiffs of the rights and benefits owed to them under the policy and applicable law.

28.    The Defendant has breached the implied covenant of good faith and fair dealing by failing and refusing to provide coverage for the Plaintiffs' said loss when such loss is clearly covered by the policy, and by otherwise failing to respond to the Plaintiffs' claim reasonably and on a timely basis.

29.    The Defendant's breach of the implied covenants of good faith and fair dealing has caused the Plaintiffs to be damaged and continue to be damaged in an amount to be determined at trial.

## COUNT IV
### (Violation of M.G.L. Chapters 93A and 176D)

30.    Paragraphs 1 through 29 are incorporated herein by reference, as if restated.

31.    The Plaintiffs and the Defendant are engaged in trade or commerce within the meaning of M.G.L. c. 93A.

32.    The conduct occurred in Massachusetts.

33.    By its conduct as set forth above, the Defendant has willfully and knowingly engaged in unfair and deceptive acts or practices in violation of M.G.L. c. 93A, as well as unfair claims settlement practices in violation of M.G.L. c. 176D, *inter alia*, by:

    a.    Failing to act reasonably promptly upon communications with respect to claims arising under insurance polices;

6

b.    Failing to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear; and

c.    Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than amounts ultimately recovered by actions brought by such insureds.

34.    As a result of the unfair and deceptive acts and practices of the Defendant, the Plaintiffs have suffered and will suffer damages, including attorneys' fees and costs.

## COUNT V
## (Estoppel)

35.    Paragraphs 1 through 34 are incorporated herein by reference, as if restated.

36.    As the Plaintiffs were induced to purchase the policy from the Defendant by the Defendant's representations that it would timely respond to any claim for payment of an insured's loss and as the Plaintiffs reasonably relied thereon, and as the Plaintiffs have suffered a detriment as a consequence of the Defendant's willful and unpermitted failure to so respond beyond any reasonable length of time, the Defendant should be estopped from denying liability for the loss and for any additional damages and sanctions ordered by the court.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiffs demand:

1.    That as to Count I, the Court find for the Plaintiffs for the Defendant's breach of contract to the extent of damages determined by this Court.

2.    That as to Count II, the Court find for the Plaintiffs based upon the deceit practiced upon them by the Defendant to the extent of damages determined by this Court, including punitive damages.

3.      That as to Count III, the Court find for the Plaintiffs for their damages caused by

the Defendant's breach of its implied covenants of good faith and fair dealing.

4.      That as to Count IV, the Court find for the Plaintiffs for their damages caused by

the Defendant's violations of M.G.L. c. 93A and c. 176D, and order such damages

trebled, and also award reasonable attorneys' fees to the Plaintiffs, all as provided by

said statutes.

5.      That as to Count V, the Defendant be estopped and barred from denying liability

to the Plaintiffs under the policy for their losses.

6.      For such further relief as may be deemed equitable and just.


THE PLAINTIFFS DEMAND TRAIL BY JURY UPON ALL COUNTS SO PERMITTED.

Respectfully submitted,
The Plaintiffs, All States Asphalt, Inc. and
New England Emulsions Corp.,
By their Attorneys,


IRVING D. LABOVITZ, ESQ.
325 Amherst Road
Sunderland, MA 01375
Ph:     (413) 478-3450
BBO# 28230
January 24, 2005


PAUL H. ROTHSCHILD, ESQ.
BACON & WILSON, P.C.
33 State Street
Springfield, MA 01103
Ph:  (413) 781-0560
Fax:  (413) 739-7740
BBO# 431100
January 24, 2005

364047

## COMMERCIAL OUTPUT POLICY -- DECLARATIONS

The Company issuing this policy is indicated by the Company Code (first letter or number) in the POLICY NUMBER, as follows:
**A STOCK COMPANY**

| POLICY NUMBER | | |
|---|---|---|
| Co. Code | Prefix | Number |
| **01** | | **MZI-97243525** |

01 - **Fireman's Fund Insurance Company**
11 - **Fireman's Fund Insurance Company of Georgia**
12 - **Fireman's Fund Insurance Company of Hawaii**
13 - **Fireman's Fund Insurance Company of Louisiana**
14 - **Fireman's Fund Insurance Company Wisconsin**
15 - **Fireman's Fund Insurance Company Ohio**
16 - **Fireman's Fund Indemnity Corporation**

Renewal of Policy Number

MZI 97242308

### Fireman's Fund McGee
**Marine Underwriters**
2 WORLD TRADE CENTER, NEW YORK, NY 10048
TEL: 212-524-8800 FAX: 212-524-9382

Insured's Name & Address

Producer's or Agent's Name & Address

**ALL STATE ASPHALT INC. ETAL.**
**P.O. BOX 91, ROUTE 116**
**SUNDERLAND, MA 01375**

**JAMES P. REAGAN AGENCY**
**P.O. BOX 191**
**MARCELLUS, NY 13108-0191**

Policy Period. Coverage under this policy is in effect from <u>02/01/2003</u> (12:01 A.M. Standard Time) to <u>02/01/2004</u> (12:01 AM, Standard Time) for <u>1</u> year(s).

Secretary

President

Countersigned at    EAST SYRACUSE, NY    02/04/2003

Date

Authorized Signature

RECEIVED
FEB 10 2003

COP – 100B (7/99)
Page 1 of 2

EXH._4_

## COMMERCIAL OUTPUT POLICY – DECLARATIONS

| POLICY NUMBER | | |
|---|---|---|
| Co. Code | Prefix | Number |
| 01 | MZI-97243525 | |

**BUILDING PROPERTY AND BUSINESS PERSONAL PROPERTY COVERAGES**

☐ Property Covered at any one location $ _____
☒ Refer to Scheduled Locations Endorsement
☐ Replacement Cost applies

**TIME ELEMENT COVERAGES**

☐ Blanket Total Income Coverage Limits $ _____
☐ Extra Expense Coverage $ _____
☒ Refer to Schedule of Locations Endorsement

**INCOME COVERAGE OPTIONS (check one)**

☒ Earnings, rents and extra expense
☐ Earnings and extra expense
☐ Rents and extra expense

**Period of Loss Extension**

**Total Days _____**



**DEDUCTIBLE AMOUNT $1,000.00**

**OTHER**

**OTHER ENDORSEMENTS MADE A PART OF THIS POLICY AT TIME OF ISSUE**
CM0042DEC 07 90, , CM7073 06 89R, CM7073DEC 08 89, CM0042 09.00, 135154 01 83R, 135154DEC
01 83, 140577 01 83R, 140578 01 83R, 345174 08 88, 345174DEC 08 88, 145900 01 02, CL100 Ed. 2.0,
CL140 Ed. 3.0, COP313 Ed. 2.0, CO0313 02 99, CL233 Ed. 2.0, COP100 Ed. 2.0, COP101 Ed. 2.1,
COP226 Ed. 2.0, COP227 Ed. 2.0, COP229 Ed. 2.1, COP281 Ed. 1.0, COP232 Ed. 2.0, C145901 01 02,
ENDORSEMENT NO. 1

**MORTGAGE HOLDER NAME AND ADDRESS**
CITIZENS BANK, 28 STATE STREET, 13TH FLOOR, BOSTON, MA 02109

**LOCATION**
16 AMHERST ROAD,
SUNDERLAND, MA

**PREMIUM PAYABLE AT INCEPTION $ 72,391.00 PLUS NYSFIF: $168.03**

COP – 100B (7/99)
Page 2 of 2

AAIS
CL-100  Ed 2.0
Page 1 of 1

# COMMON POLICY CONDITIONS

1. **Assignment** -- This policy may not be assigned without "our" written consent.

2. **Cancellation** -- "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

   "We" may cancel this policy, or one or more of its parts, by written notice sent to "you" at "your" last mailing address known to "us". If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

   If "we" cancel this policy for nonpayment of premium, "we" will give "you" notice at least ten days before the cancellation is effective. If "we" cancel this policy for any other reason, "we" will give "you" notice at least 30 days in advance of cancellation. The notice will state the time that the cancellation is to take effect.

   "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification, or Waiver of Policy Terms** -- A waiver or change of the "terms" of this policy must be issued by "us" in writing to be valid.

4. **Inspections** -- "We" have the right, but are not obligated, to inspect "your" property and operations at any time. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report does not warrant that "your" property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspections or reports are for "our" benefit only.

5. **Examination of Books and Records** -- "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

---

**CL-100  Ed 2.0**
Copyright MCMXCIV
American Association of Insurance Services

AAIS
CL-140  Ed 3.0
Page 1 of 4

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## NEW YORK

1.  Under Common Policy Conditions the
    Cancellation condition is deleted and
    replaced by:

    **Cancellation, Nonrenewal, and
    Conditional Renewal** --

    a.  "You" may cancel this policy by
        returning the policy to "us" or by giving
        "us" written notice and stating at what
        future date coverage is to stop.

        "We" may cancel this policy by written
        notice to "you" at the address shown on
        the "declarations" and to "your"
        authorized agent or broker. "Our" notice
        will specify the grounds for cancellation.
        Proof of delivery or mailing is sufficient
        proof of notice.

        During the first 60 days this policy is in
        effect, "we" may cancel for any reason.
        "We" will give "you" notice at least 20
        days before cancellation is effective.

        After this policy has been in effect 60
        days or more, or if it is a renewal of a
        policy issued by "us", "we" may cancel
        or not renew only for one or more of the
        following reasons:

        1)  the premium has not been paid
            when due;
        2)  conviction of a crime arising out of
            acts increasing the hazard insured
            against;
        3)  discovery of fraud or material
            misrepresentation in obtaining the
            policy or in the presentation of a
            claim thereunder;
        4)  after issuance of the policy or after
            the last renewal date, discovery of
            an act or omission, or a violation of
            any policy condition that

substantially and materially
increases the hazard insured
against and which occurred
subsequent to inception of the
current policy period;

5)  material physical changes in the
    property insured, occurring after
    issuance or last annual renewal
    anniversary date of the policy, which
    result in the property becoming
    uninsurable in accordance with "our"
    objective, uniformly applied
    underwriting standards in effect at
    the time the policy was issued or
    last renewed; or material change in
    the nature or extent of the risk,
    occurring after issuance or last
    annual renewal anniversary date of
    the policy, which causes the risk of
    loss to be substantially and
    materially increased beyond that
    contemplated at the time the policy
    was issued or last renewed;
6)  required pursuant to a determination
    by the Superintendent of Insurance
    that continuation of "our" present
    premium volume would jeopardize
    "our" solvency or be hazardous to
    the interests of "our" policyholders,
    creditors, or the public;
7)  a determination by the
    Superintendent that a continuation
    of the policy would violate, or would
    place "us" in violation of, any
    provision of New York Insurance
    Laws;
8)  where "we" have reason to believe,
    in good faith and with sufficient
    cause, that there is a probable risk
    or danger that "you" will destroy, or
    permit to be destroyed, "your"
    property for the purpose of

collecting the insurance proceeds; or

9) revocation or suspension of "your" license to practice "your" profession or, if "you" are a hospital, "you" no longer possess a valid operating certificate under Section 2801-a of the Public Health Law.

If "we" cancel this policy for any of the reasons listed in a.1) through 9), "we" will give "you" notice at least 15 days before cancellation is effective.

If "we" cancel this policy for reason 8) above, "we" will advise "you" that "you" must act within ten days if "you" desire a review by the Insurance Department. "We" will also simultaneously notify the Insurance Department of "our" cancellation of "your" policy.

b. "We" may not renew or not renew with the same "terms", conditions, or rates, this policy by written notice to "you" at the address shown in the "declarations" and to "your" authorized agent or broker. Proof of delivery or mailing is sufficient proof of notice. These nonrenewal or conditional renewal requirements will not apply when "you", an agent or broker authorized by "you", or another insurer of "yours" has mailed or delivered written notice to "us" that the policy has been replaced or is no longer desired.

If "we" do not renew this policy, "we" will mail or deliver to "you" "our" written notice at least 60 days but not more than 120 days before the end of the policy period or the anniversary date. "Our" notice will specify the grounds for nonrenewal.

If "we" decide not to renew this policy with the same "terms", conditions, or rates, "we" will mail or deliver to "you" "our" notice of conditional renewal at least 60 days but not more than 120 days before the end of the policy period or anniversary date. "Our" notice will state the reasons for conditional renewal

and set forth the amount of any premium increase and the nature of any other proposed changes. This provision applies to renewal conditioned upon change of "limits", change in type of coverage, reduction of coverage, increased deductible, addition of exclusion, or upon increased premiums

in excess of 10% (exclusive of any premium increase generated as a result of increased exposure units or as a result of experience rating or loss rating).

If "we" notify "you" of "our" intent not to renew or not to renew with the same "terms", conditions, and rates:

1) at least 30 days but less than 60 days prior to the expiration date of the policy; coverage will continue on the same "terms" and conditions as the expiring policy and at the lower of the current rates or the prior policy period rates, until 60 days after the notice is mailed or delivered to "you". If "we" offer to renew with different "terms", conditions, or rates and "you" elect to renew the coverage, the "terms", conditions, and rates set forth in the conditional notice apply as of the renewal date; or

2) less than 30 days prior to the expiration date of the policy; coverage will continue on the same "terms" and conditions as the expiring policy, and at the lower of the current rates or the prior policy period rates, until 60 days after the notice is mailed or delivered to "you". If "we" offer to renew with different "terms", conditions, or rates and "you" elect to renew the coverage, the "terms", conditions, and rates set forth in the conditional notice apply after the expiration of the 60 day period; or

3) after the expiration date of the policy; coverage will continue on the

AAIS
CL-140  Ed 3.0
Page 3 of 4

same "terms" and conditions as the expiring policy for another "required policy period"; and at the lower of the current rates or the prior policy period rates.

"Required policy period" means a period of one year from the date as of which a covered policy is renewed or first issued.

c.  As an alternative, "we" may notify "you" of "our" intent not to renew or not to renew with the same "terms", conditions, and rates by giving "you" written notice at least 60 but not more than 120 days before the expiration date of the policy. In that case, coverage will continue on the same "terms", conditions, and rates until either:

1)  the expiration date; or
2)  60 days after "we" give "you" a second notice which indicates "our" decision to either not renew this policy or that this policy will be continued with changes in policy "terms", conditions, and rates;

whichever is later.

"Our" second notice will state either the reasons for nonrenewal or the reasons for conditional renewal and set forth the amount of any premium increase and the nature of any other proposed changes.

d.  If the policy period is extended, the aggregate "limits" of this policy will be increased in proportion to any policy period extension and the last sentence under How Much We Pay will be deleted.

e.  "Your" return premium, if any, will be refunded at the time of cancellation or as soon as practical. Payment or tender of the unearned premium is not a condition of cancellation.

2.  Under Common Policy Conditions, the Change, Modification, or Waiver of Policy Terms is deleted and replaced by:

**Change, Modification, or Waiver of Policy Terms** -- A waiver or change of the "terms" of this policy must be issued by "us"

in writing to be valid. If, in the policy period, "we" adopt a revision which broadens coverage without an additional premium, the broadened coverage will apply. If a change in forms or endorsements reduces coverage or "limits", "we" must notify "you" as provided under the nonrenewal "terms" contained in this policy.

If this policy has no expiration date, "we" may substitute or "we" may add, at each anniversary date, forms that are then authorized for use.

3.  Under Common Policy Conditions, the Examination of Books and Records condition is deleted and replaced by:

**Examination of Books and Records** -- "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

a.  "We" will perform an audit to determine the final premium for policies if the initial premium is based on an estimate of "your" exposure base. This audit will be performed within 180 days after the expiration of the policy, unless the policy is continuous or for a period longer than one year, in which case the audit will be performed within 180 days of the anniversary date. This audit may not be waived except when the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1,500;

b.  "We" will, as soon as is practical after such audit, refund or credit "your" account for any return premium due "you", or bill and make a good faith effort to collect any additional premium due "us" as a result of the audit.

**AAIS**
**CL-140  Ed 3.0**
**Page 4 of  4**

c.  If "you" fail to cooperate with "us" in
"our" attempt to conduct such audit,
including failure to return any
questionnaires or self-audit worksheets,
"we" may nonrenew "you" upon
completion of the current policy period,
in accordance with the provisions of
section 3426 of the Insurance Law, due
to "our" inability to establish a proper
premium for "you".

**CL-140  Ed 3.0**
Copyright MCMXCVII
American Association of Insurance Services

AAIS
CL-233 Ed 2.0
Page 1 of 1

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## MASSACHUSETTS

The Cancellation condition is deleted and replaced by:

**Cancellation and Nonrenewal --** "You" may cancel this policy at any time by returning it to "us". "You" may also cancel it by advance notice in writing to "your" agent or "us" giving the date upon which "you" wish it cancelled.

"We" may cancel this policy for any reason during the first 60 days it is in effect.

"We" cannot cancel this policy after it has been in effect for 60 days, unless after the effective date:

a.  "you" have not paid the premium;

b.  an "insured" is convicted of any act which increases the chance of a loss covered under the policy;

c.  "we" discover a fraudulent or material misrepresentation an "insured" made in the application for the policy;

d.  "we" discover a willful or reckless act or omission by an "insured" which increases the chance of a loss covered under the policy;

e.  there have been physical changes to the property covered under the policy which make that property uninsurable; or

f.  the Commissioner of Insurance determines that continuation of the policy would violate the law.

"We" will give "you" notice at least five days before the stated effective date of cancellation unless the reason for cancellation is for nonpayment of premium.

If "we" cancel for nonpayment of premium, "we" will give "you" notice at least ten days before the effective date of cancellation.

To cancel the rights of any mortgagee shown on the "declarations", "we" must also send notice to the mortgagee at least 20 days before the effective date of cancellation. This supersedes the notice of cancellation requirement contained in the Mortgage Clause, if applicable.

"We" may cancel this policy by written notice delivered or mailed to "you" at the address shown on the "declarations". United States Postal Service certificate of mailing showing "your" name and address will be considered sufficient notice.

Notice of cancellation will state "our" reason for such cancellation.

If the stated reason is nonpayment of premium, "you" may continue the coverage and avoid the effect of cancellation by payment at any time prior to the effective date of cancellation.

Refunds of any premium will be sent to "you" as soon as possible. "Your" return premium, if any, will be calculated on a prorata basis.

---

**CL-233  Ed 2.0**
Copyright MCMXCV
American Association of Insurance Services



**Fireman's Fund**

POLICY NUMBER    MZI-97241415

Named Insured
**ALL STATE ASPHALT INC. ETAL.**

Sequential Endorsement Number **1**

**CHANGE ENDORSEMENT**
**Effective 04/01/2001, 12:01 A.M.,**
**Standard Time at the Address of the insured**

This is an Endorsement only. Other than changes shown, all other pre-existing coverage remains in full force and effect. Premium adjustments are shown.

**PREMIUM SUMMARY:**            **ADDITIONAL PREMIUM DUE NOW:**

---

**ADDITIONAL NAMED INSUREDS:**

**MR. DAVID HANKOWSKI**
**MARY T. HANKOWSKI**
**MR. AARON HANKOWSKI**
**MR. DAVID JOHNSON**
**WILMA JOHNSON**
**CREVISE ENTERPRISE INC.**
**ADIRONDACK ASPHALT INC.**
**NEW ENGLAND MATERIALS INC.**
**ASPHALT MARKETING INC.**
**NEW ENGLAND EMULSIONS CORP.**
**BARKINSON EQUIPMENT CORP.**
**HANSON ASSOCIATES**
**LANTERN COURT REALTY TRUST**
**ALAN HANKOWSKI**
**MARGUERITE HANKOWSKI**
**VALLEY ENTERPRISES**
**H&H EQUIPMENT**
**PIONEER EQUIPMENT**
**MARK HANKOWSKI**
**CLAIRE M. & JEFFREY M. JOHNSON**
**STEVEN D. & ELIZABETH J. JOHNSON**

Countersignature of Authorized Agent:_____

    Producer:    **JAMES P. REAGAN AGENCY**            Date _____
                **P.O. BOX 191**
                **MARCELLUS, NY 13108-0191**

AAIS
CO 0313 02 99
Page 1 of 3

**This endorsement changes
the Commercial Output Program
- PLEASE READ THIS CAREFULLY -**

# AMENDATORY ENDORSEMENT
## MASSACHUSETTS

1. Under Perils Covered, the following is added:

   "We" insure against all loss (not otherwise excluded) to covered property caused by fire or lightning.

2. Under What Must Be Done In Case Of Loss, the Proof of Loss provision is deleted and replaced by:

   **Proof of Loss** -- "You" must give us a signed, sworn proof of loss within 60 days after "our" request that shows:

   a. the time, place, and circumstances of loss;

   b. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   c. other policies of insurance that may cover the loss on the property;

   d. changes in title or occupancy of the property during the policy period;

   e. detailed estimates for repair of the damage; and

   f. an inventory of damaged personal property showing in detail the quantity, description, cost, actual cash value, and amount of loss.

   "You" must attach to the inventory copies of all pertinent bills, receipts, and related documents (if available) that substantiate the inventory.

3. Under What Must Be Done In Case Of Loss, the Examination provision is deleted and replaced by:

   **Examination** -- "You" must submit to an examination under oath in matters connected with the loss or claim.

   If more than one person is examined, "we" have the right to examine and receive statements from each person and not in the presence of others;

4. Under Valuation, the Replacement Cost provision is deleted and replaced by:

   **Replacement Cost** -- The value of covered property is based on its replacement cost without a deduction for depreciation, unless Actual Cash Value Coverage is shown on the "declarations".

   However, these replacement cost "terms" do not apply to paragraphs 3. through 9. under Valuation.

   Replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

   Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. "You" may make a claim for the actual cash value of the damaged property before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within two years after the loss.

5. Under Loss Payment, item c. of Our Options is deleted and replaced by:

   c. rebuild, repair, or replace with property of equivalent kind and quality, to the extent possible, within a reasonable time. "We" must give "you" notice of "our" intent to do so within 15 days after receipt of a duly executed proof of loss. If "we" do not so notify "you" within 15 days, "we" must pay "you" interest as provided by Massachusetts law on the agreed amount commencing 30 days

AAIS
CO 0313 02 99
Page 2 of 3

after the date a duly executed proof of loss for such amount is received by "us". This interest continues as long as the claim remains unpaid.

If "we" notify "you" that "we" intend to rebuild, repair, or replace the property, "we" must do so promptly.

6. Under Loss Payment, the Your Losses provision is deleted and replaced by:

**Your Losses** -- "We" adjust each loss with "you". Payment will be made to "you" unless some other person is named in the policy or is legally entitled to receive payment.

"We" pay an insured loss within 30 days after "we" receive a satisfactory proof of loss. All applicable sales taxes are considered a part of any loss under this policy.

7. Under the Property Coverage Part, Other Conditions, the Appraisal condition is deleted and replaced by:

**Disagreement About the Amount of Loss** -- If there is a disagreement as to the dollar amount of a covered loss under Property Covered, Massachusetts law provides a method for settling the disagreement. The dispute will be referred to a three member board of referees. They are selected and must act according to procedures set by the law. Their decision as to the amount of loss will be binding. This board does not make decisions about matters of coverage or fault.

8 Under Other Conditions, the Recoveries condition is deleted and replaced by:

**Recoveries** -- This applies if "we" pay for a loss and lost or damaged property is recovered, or payment is made by those responsible for the loss.

"You" must inform "us" or "we" must inform "you" if either recovers property or receives payment.

Proper costs, including reasonable attorney fees, incurred by either party in making the recovery must be reimbursed. Such

expenses will be prorated between "you" and "us" according to "our' respective interests in the loss.

"You" may keep the property. The amount of the claim paid, or a lesser amount to which "we" agree, must be returned to "us".

If the claim paid is less than the agreed loss due to a deductible, or other limiting "terms", the recovery is prorated between "you" and "us" based on the interest of each in the loss.

9. Under Other Conditions, the Suit Against Us condition is deleted and replaced by:

**Suit Against Us** -- No suit to recover for any property claim may be brought against "us" unless:

a. the "terms" of this policy have been fully complied with; and

b. the suit is commenced within two years after the loss. However, if a court prevents the start or continuance of the lawsuit, but at a later date allows the suit to resume, it must be resumed within one year of the court order.

If a disagreement about the amount of loss has been referred to a board of referees within two years of the date of the loss, any lawsuit against "us" cannot be started more than 90 days after the board's decision.

10. If loss or damage is caused by fire or lightning, the Vacancy or Unoccupancy condition under Other Conditions is deleted and replaced by:

**Vacancy or Unoccupancy** – We do not pay for loss or damage to an insured building intended for occupancy by owner or tenant while the building is vacant or unoccupied for more than:

a. 60 consecutive days for residential premises of three units or less; or

b. 30 consecutive days for all other premises.

AAIS
CO 0313 02 99
Page 3 of 3

11. Under Other Conditions, the following conditions are added:

**Municipal Tax Debt** -- Massachusetts law requires that before "we" make a payment of $5,000 or more for loss to real property, "you" must give us a certificate of municipal liens from the tax collector of the city or town where "your" property is located. This does not apply to a one, two, three, or four family dwelling which "you" owned and occupied at the time of loss. "We" will pay the city or town the outstanding amount on the certificate of municipal liens, up to the amount of the loss but not more than the "limit" of liability for that property.

This payment will be made before "we" will pay anyone else claiming a share of the payment, unless Federal law requires otherwise. "We" are not responsible to pay anyone with an interest in the property if there is an error in the certificate.

**City or Town Liens** -- Massachusetts law requires that at least ten days before "we" make a payment of $1,000 or more for loss to a building or structure, "we" must notify the local Building Inspector and Board of Health concerning the claim.

"We" must also give notice, regardless of the amount of "our" payment, if there is loss which makes a building a health or safety hazard or dangerous or unsafe to occupy.

If prior to payment "we" receive official notice of a pending or existing lien against "your" premises, "we" must delay payment until the matter is settled. If thereafter "we" are required to pay all or part of the amount of the lien to the city or town, "we" will not be obligated to pay that amount to "you" or anyone else.

**CO 0313 02 99**
Copyright, American Association of Insurance Services, 1998

AAIS
COP-313 Ed 2.0
Page 1 of 3

This endorsement changes
the Commercial Output Program
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## MASSACHUSETTS

1.  Under Perils Covered, the following is added:

    "We" insure against all loss (not otherwise excluded) to covered property caused by fire or lightning.

2.  Under What Must Be Done In Case Of Loss, the Proof of Loss provision is deleted and replaced by:

    **Proof of Loss** -- "You" must give us a signed, sworn proof of loss within 60 days after "our" request that shows:

    a.  the time, place, and circumstances of loss;

    b.  "your" interest and the interests of all others in the property involved, including all mortgages and liens;

    c.  other policies of insurance that may cover the loss on the property;

    d.  changes in title or occupancy of the property during the policy period;

    e.  detailed estimates for repair of the damage; and

    f.  an inventory of damaged personal property showing in detail the quantity, description, cost, actual cash value, and amount of loss.

        "You" must attach to the inventory copies of all pertinent bills, receipts, and related documents (if available) that substantiate the inventory.

3.  Under What Must Be Done In Case Of Loss, the Examination provision is deleted and replaced by:

    **Examination** -- "You" must submit to an examination under oath in matters connected with the loss or claim.

If more than one person is examined, "we" have the right to examine and receive statements from each person and not in the presence of others;

4.  Under Valuation, the Replacement Cost provision is deleted and replaced by:

    **Replacement Cost** -- The value of covered property is based on its replacement cost without a deduction for depreciation, unless Actual Cash Value Coverage is shown on the "declarations".

    However, these replacement cost "terms" do not apply to paragraphs 3. through 9. under Valuation.

    Replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

    Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. "You" may make a claim for the actual cash value of the damaged property before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within two years after the loss.

5.  Under Loss Payment, item c. of Our Options is deleted and replaced by:

    c.  rebuild, repair, or replace with property of equivalent kind and quality, to the extent possible, within a reasonable time. "We" must give "you" notice of "our" intent to do so within 15 days after receipt of a duly executed proof of loss. If "we" do not so notify "you" within 15 days, "we" must pay "you" interest as provided by Massachusetts law on the agreed amount commencing 30 days

AAIS
COP-313  Ed 2.0
Page 2 of 3

after the date a duly executed proof of loss for such amount is received by "us". This interest continues as long as the claim remains unpaid.

If "we" notify "you" that "we" intend to rebuild, repair, or replace the property, "we" must do so promptly.

6. Under Loss Payment, the Your Losses provision is deleted and replaced by:

Your Losses -- "We" adjust each loss with "you". Payment will be made to "you" unless some other person is named in the policy or is legally entitled to receive payment.

"We" pay an insured loss within 30 days after "we" receive a satisfactory proof of loss. All applicable sales taxes are considered a part of any loss under this policy.

7. Under the Property Coverage Part, Other Conditions, the Appraisal condition is deleted and replaced by:

Disagreement About the Amount of Loss -- If there is a disagreement as to the dollar amount of a covered loss under Property Covered, Massachusetts law provides a method for settling the disagreement. The dispute will be referred to a three member board of referees. They are selected and must act according to procedures set by the law. Their decision as to the amount of loss will be binding. This board does not make decisions about matters of coverage or fault.

8. Under Other Conditions, the Recoveries condition is deleted and replaced by:

Recoveries -- This applies if "we" pay for a loss and lost or damaged property is recovered, or payment is made by those responsible for the loss.

"You" must inform "us" or "we" must inform "you" if either recovers property or receives payment.

Proper costs, including reasonable attorney fees, incurred by either party in making the recovery must be reimbursed. Such expenses will be prorated between "you" and "us" according to "our" respective interests in the loss.

"You" may keep the property. The amount of the claim paid, or a lesser amount to which "we" agree, must be returned to "us".

If the claim paid is less than the agreed loss due to a deductible, or other limiting "terms", the recovery is prorated between "you" and "us" based on the interest of each in the loss.

9. Under Other Conditions, the Suit Against Us condition is deleted and replaced by:

Suit Against Us -- No suit to recover for any property claim may be brought against "us" unless:

a. the "terms" of this policy have been fully complied with; and

b. the suit is commenced within two years after the loss. However, if a court prevents the start or continuance of the lawsuit, but at a later date allows the suit to resume, it must be resumed within one year of the court order.

If a disagreement about the amount of loss has been referred to a board of referees within two years of the date of the loss, any lawsuit against "us" cannot be started more than 90 days after the board's decision.

10. If loss or damage is caused by fire or lightning, the Vacancy or Unoccupancy condition under Other Conditions is deleted and replaced by:

AAIS
COP-313  Ed 2.0
Page 3 of 3

**Vacancy or Unoccupancy** -- This policy does not cover loss caused by fire or lightning to an insured building intended for occupancy by owner or tenant while the building is vacant or unoccupied for more than:

a.  60 consecutive days for residential premises of three units or less; or

b.  30 consecutive days for all other premises.

11.  Under Other Conditions, the following conditions are added:

**Municipal Tax Debt** -- Massachusetts law requires that before "we" make a payment of $5,000 or more for loss to real property, "you" must give us a certificate of municipal liens from the tax collector of the city or town where "your" property is located. This does not apply to a one, two, three, or four family dwelling which "you" owned and occupied at the time of loss. "We" will pay the city or town the outstanding amount on the certificate of municipal liens, up to the amount of the loss but not more than the "limit" of liability for that property.

This payment will be made before "we" will pay anyone else claiming a share of the payment, unless Federal law requires otherwise. "We" are not responsible to pay anyone with an interest in the property if there is an error in the certificate.

**City or Town Liens** -- Massachusetts law requires that at least ten days before "we" make a payment of $1,000 or more for loss to a building or structure, "we" must notify the local Building Inspector and Board of Health concerning the claim.

"We" must also give notice, regardless of the amount of "our" payment, if there is loss which makes a building a health or safety hazard or dangerous or unsafe to occupy.

If prior to payment "we" receive official notice of a pending or existing lien against "your" premises, "we" must delay payment until the matter is settled. If thereafter "we" are required to pay all or part of the amount of the lien to the city or town, "we" will not be obligated to pay that amount to "you" or anyone else.

**COP-313  Ed 2.0**
Copyright MCMXCV
American Association of Insurance Services

# Schedule of Locations

Print Date: 09/13/04

**Client Name and Address**

All States Asphalt, Inc.
116 Amherst Road
P.O. Box 91
Sunderland, MA   01375

**Company**

Fireman's Fund Insurance

**Policy Number**

01MZI97243525

| Effective Date | Expiration Date |
| --- | --- |
| 02/01/03 | 02/01/04 |

**Agency Name and Address**

Reagan Agency, Inc. (Comm.)
8 E Main Street
PO Box 191
Marcellus , NY   13108

| Loc # | Location Address | Date | County | Code | Bld # | Building Description | Date On |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | 116 Amherst Road Sunderland, MA   01375 | | | | 1 | Offices | 02/01/03 |
| | | | | | 2 | Tanks | |
| | | | | | 3 | Garage | |
| 2 | 12 Stiles Avenue Canton, NY   13617 | | | | 1 | Offices & Tank Farm | 02/01/03 |
| 3 | 205 Lowland Street Holliston, MA | | | | 1 | Offices | 02/01/03 |
| | | | | | 2 | Tank Farm | |
| | | | | | 3 | Mill Pump House | |
| | | | | | 4 | Blender | |
| 4 | 127 Attawaugan Crossing Road Dayville, CT   06421 | | | | 1 | Maintenance Building | 02/01/03 |
| | | | | | 2 | Mix Plant | |
| 5 | 100 Allendale Ave. Johnston, RI   02919 | | | | 1 | Mix Plant - NC | 02/01/03 |
| | | | | | 2 | Maintenance - NC | |
| | | | | | 3 | Maintenance | |
| | | | | | 4 | Office - NC | |
| | | | | | 5 | Maintenance | |
| 6 | Depot Street Boscawen, NH   03303 | | | | 1 | Emulsion Mill with Pumps & Tanks - NC | 02/01/03 |
| 7 | 721 Waverly Street Framingham, MA | | | | 1 | Tank Farm | 07/22/03 |

Page 1 of 2
COP-227 Ed 2.0
AAIS

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# LOCATIONS ENDORSEMENT

## PROPERTY COVERED

The following provision is added to Property Covered.

**Scheduled Locations** -- Coverage provided by the Commercial Output Program Coverages applies only to the "covered locations" described on the Scheduled Locations Endorsement.

## HOW MUCH WE PAY

The following provisions are added to How Much We Pay when a coinsurance percentage is shown on the Scheduled Locations Endorsement.

**Coinsurance, Property Coverage Part** -- "We" pay only a part of the loss if the "limit" is less than the value of the covered property at the time of the loss multiplied by the coinsurance percentage. "Our" part of the loss is determined using the following steps:

1. Multiply the value of the covered property at the time of the loss by the coinsurance percentage;
2. Divide the "limit" for covered property by the result determined in 1. above;
3. Multiply the total amount of loss, after the application of any deductible, by the result determined in 2. above.

"We" pay the amount determined in 3. above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

**Coinsurance, Income Coverage Part** -- "We" pay only a part of the loss if the "limit" is less than the sum of "your" net income (net profit or loss before income taxes), payroll expense, interest, and other continuing operating expenses projected for the 12 months following the inception, or last previous anniversary date of this policy (whichever is later), normally earned by "your" "business". "Our" part of the loss is determined using the following steps:

1. Multiply the coinsurance percentage by the sum of "your" net income (net profit or loss before income taxes), payroll expense, interest, and other continuing operating expenses projected for the 12 months following the inception, or last previous anniversary date of this policy;
2. Divide the "limit" by the figure determined in 1. above;
3. Multiply the total amount of loss by the figure determined in 2. above.

"We" pay the amount determined in 3. above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

If there is more than one "limit" shown on the schedule this procedure applies separately to each covered property for which a "limit" is shown.

If there is only one "limit" shown on the schedule this procedure applies to the total of all covered property to which the "limit" applies.

If there is more than one "limit" shown on the "declarations" or the Scheduled Locations Endorsement for the Income Coverage Part, this procedure applies separately to each "limit".

Coinsurance does not apply to coverage for extra expense.

COP-227 Ed 2.0
Copyright MCMXCV
American Association of Insurance Services

This endorsement changes
the policy

-- PLEASE READ THIS CAREFULLY --

# SUPPLEMENTAL LIMITS ENDORSEMENT

If a "limit" is entered on this endorsement, then the "limit" shown will be the only "limit"
that applies to the coverage indicated. If no "limit" is entered on this endorsement, then
the $50,000 "limit" shown in Supplemental Coverages and Supplemental Marine
Coverages applies.

| Supplemental Coverages | Limit |
|---|---|
| 1. Brands or Labels Expense | $50,000.00 |
| 2. Inventory and Appraisals Expenses | $50,000.00 |
| 3. Ordinance or Law | $50,000.00 |
| 4. Trees, Shrubs, and Plants | $50,000.00 |

| Supplemental Marine Coverages | |
|---|---|
| 1. Accounts Receivable | $200,000.00 |
| 2. Fine Arts | $50,000.00 |
| 3. Property on Exhibition | $50,000.00 |
| 4. Property in Transit | $50,000.00 |
| 5. Sales Representative Samples | $50,000.00 |
| 6. Valuable Papers and Records | $50,000.00 |

Copyright MCMXCV, American Association of Insurance Services

AAIS
COP-232 Ed 2.0
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# LOSS PAYABLE OPTIONS

In addition to the policy "terms," which are contained in other sections of the Commercial Output Program Coverages, the following conditions apply to the property described on the Loss Payable Schedule and only when indicated by an X on the schedule.

**LOSS PAYABLE**

Any loss shall be adjusted with "you" and shall be payable to "you" and the loss payee shown on the schedule as "your" and their interests appear.

**LENDER'S LOSS PAYABLE**

Any loss shall be payable to "you" and the loss payee shown on the schedule as interests appear. If more than one loss payee is named, they shall be paid in order of precedence.

The insurance for the loss payee continues in effect even when "your" insurance may be void because of "your" acts, neglect, or failure to comply with the coverage "terms". The insurance for the loss payee does not continue in effect if the loss payee is aware of changes in ownership or substantial increase in risk and does not notify "us".

If "we" cancel this policy, "we" notify the loss payee at least ten days before the effective date of cancellation if "we" cancel for "your" nonpayment of premium, or 30 days before the effective date of cancellation if "we" cancel for any other reason.

"We" may request payment of the premium from the loss payee, if "you" fail to pay the premium.

If "we" pay the loss payee for a loss where "your" insurance may be void, the loss payee's right to collect that portion of the debt from "you" then belongs to "us". This does not affect the loss payee's right to collect the remainder of the debt from "you". As an alternative, "we" may pay the loss payee the remaining principal and accrued interest in return for a full assignment of the loss payee's interest and any instruments given as security for the debt.

If "we" choose not to renew this policy, "we" give written notice to the loss payee at least ten days before the expiration date of this policy.

**CONTRACT OF SALE**

Any loss shall be adjusted with "you" and shall be payable to "you" and the loss payee shown on the schedule as "your" and their interests appear.

The loss payee shown on the schedule is a person or organization "you" have entered into a contract with for the sale of covered property.

When covered property is the subject of a contract of sale, the word "you" also means the loss payee.

COP-232 Ed 2.0
Copyright MCMXCV
American Association of Insurance Services

# Contractor's Equipment Declarations – 135154 DEC 01-83
Commercial Inland Marine

| Insured | ALL STATE ASPHALT INC. ETAL. | Policy Number | MZI-97241415 |
|---|---|---|---|
| Producer | JAMES P. REAGAN AGENCY | Effective Date | 04/01/2001 |

These Declarations are issued with and are part of coverage form 135154

## Declarations

Insurance is provided only for those coverages for which an "☒" is entered in the applicable box and when limits of liability or amounts are stated in the place provided in these declarations.

☒ Broad Form     ☐ Specified Perils Form     Coinsurance 100%     Deductible $1,000.00 except $2,500.00 for plants     Employees Tools Deductible $1,000.00 except $2,500.00 for plants

### Aggregate Limit Of Liability $5,517,889.00

The amount of any loss of or to any item insured shall be determined as set forth in condition 6. valuation and shall be on an actual cash value basis unless replacement cost is shown below.

| Item | Description | Replacement Cost Applies | Limit Of Liability |
|---|---|---|---|
| | WE COVER ITEMS LISTED ON SCHEDULE A ATTACHED TO THE POLICY | NOT COVERED APPLIES TO ALL ITEMS LISTED ON SCHEDULE A | SEE SCHEDULE A |

### LOSS PAYEES

| Item | Loss payee name and address for designated items above |
|---|---|

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

_(signature)_
Secretary

_(signature)_
President

135154DEC 01-83

Policy Number:    MZI-97241415          Named Insured:    ALL STATE ASPHALT INC. ETAL.

# SCHEDULE A

| | | |
|---|---|---|
| 1. | 1995 CAT RM350 S#5FK00089 | $155,000.00 |
| 2. | 1996 CAT RM350 S#5FK00110 | $200,000.00 |
| 3. | 1996 CAT RM 350B S#7FS00092 | $250,000.00 |
| 4. | CAT GRADER S#8T8001 | $10,000.00 |
| 5. | CLARK S#6HY6OD | $7,500.00 |
| 6. | ALLES CHAMBER S#77-461 | $10,000.00 |
| 7. | 1989 BOBCAT/743 SKIDSTEER S#501942723 | $10,000.00 |
| 8. | POWER BROOM S#P 96CP | $5,000.00 |
| 9. | 1990 CLARK NEW FORKLIFT S#GPX230-0189759KOF | $15,000.00 |
| 10. | HYSTER/C625 S#B156C2156C | $25,000.00 |
| 11. | C850 S#B188C1623K | $50,000.00 |
| 12. | 1983 C625C S#B156C2128D | $20,000.00 |
| 13. | CB850 S#B188C1808P | $55,000.00 |
| 14. | CAT ROLLER S#5HK69263/9XL00227 | $80,000.00 |
| 15. | 1967 TROJAN S#62-1404 | $10,000.00 |
| 16. | JD544AD S#146041T | $10,000.00 |
| 17. | 1977 JD644B S#298117T | $20,000.00 |
| 18. | 1986 JD644D S#510793 | $60,000.00 |
| 19. | 1982 JD644C S#404114 | $25,000.00 |
| 20. | 1967 TROJAN S#19-1147 | $10,000.00 |
| 21. | 1996 CAT 960F S#92-J00375 | $150,000.00 |
| 22. | 1986 JD644D S#B510856 | $65,000.00 |
| 23. | 1974 CAT 950 S#81J07025 | $25,000.00 |
| 24. | C340B HYSTER S#B146C2139C | $15,000.00 |
| 25. | 1960 ECON ROLL S#871 | $1,000.00 |
| 26. | 1971 GALLION | $1,000.00 |
| 27. | CS563C ROLLER S#98222641 | $82,000.00 |
| 28. | CAT ROLLER S#4KN01047 | $90,000.00 |
| 29. | CATERPILLAR/CB434 S#CB4343TF225 | $50,000.00 |
| 30. | 1986 DYNAPAC/CA15R135 S#4921135 | $15,000.00 |
| 31. | TAMPA MFG PS-266A | $2,500.00 |
| 32. | CAT S534B S#4JL0080 | $75,000.00 |
| 33. | CAT ROLLER S#5CL00163 | $90,000.00 |
| 34. | CAT ROLLER S#5HN00366 | $90,000.00 |
| 35. | BOMAG BWIZOAD S#161170010475 | $10,000.00 |
| 36. | CAT ROLLER S#9XL-232 | $85,000.00 |
| 37. | LAYTON | $5,000.00 |
| 38. | LAYTON S#B-9819-B-6 | $5,000.00 |
| 39. | REX MIX PAVER S#HK823 | $7,000.00 |
| 40. | BG245 S#A66245689 | $100,000.00 |
| 41. | MIDLAND NOVA CHIP S#2813 | $550,000.00 |
| 42. | CAT PAVER S#8BM357 | $210,000.00 |
| 43. | 1986 ETNYRE S#K4836 | $35,000.00 |
| 44. | 1985 FLAHERTY/JPRH S#C10035 | $25,000.00 |
| 45. | 1985 ETNYRE S#K4776 | $30,000.00 |
| 46. | 1993 ETNYRE S#K5351 | $95,000.00 |
| 47. | 1993 ETNYRE S#K5341 | $95,000.00 |
| 48. | 1987 ETNYRE S#K4905 | $45,000.00 |
| 49. | 1996 ETNYRE S#K5444 | $125,000.00 |
| 50. | 1986 HYSTER/C530 S#A91C3445D | $15,000.00 |
| 51. | 1984 HYSTER/C530 S#A91C331313 | $15,000.00 |
| 52. | 1988 HYSTER/C530 S#A91C3947J | $25,000.00 |
| 53. | HYSTER/C530 S#A91C3709G | $25,000.00 |

| | | |
|---|---|---|
| 54. | HYSTER/C530 S#A91C3704G | |
| 55. | HYSTER/C530A S#A81C-1686M | $25,000.00 |
| 56. | 1977 BROS S#SP3000/8767 | $15,000.00 |
| 57. | 1986 HYSTER/C530 S#A91C3703G | $15,000.00 |
| 58. | 1998 REED 8042-A S#RT-01 TAG/MIX | $25,000.00 |
| 59. | SCUD RUB. TLR | $38,000.00 |
| 60. | CLEAVER/BROOKS HEATER/RETORT | $75,000.00 |
| 61. | RUBBER BLENDER | $5,000.00 |
| 62. | PORT. HEATER TANK | $100,000.00 |
| 63. | MISCELLANEOUS TOOLS & EQUIPMENT NOT TO EXCEED $5,000.00 ANY ONE ITEM | $150,000.00 |
| 64. | ASPHALT PLANT LOCATED AT 127 ATTAWAUGAN CROSSING ROAD DANVILLE, CT | $50,000.00 |
| | | $888,889.00 |
| | TOTAL: | $4,667,889.00 |

# Contractors' Equipment Property Leased or Rented from Other Endorsement 140577 01 83

Policy Amendment Commercial Inland Marine

| | | | |
|---|---|---|---|
| Insured | ALL STATE ASPHALT INC. ETAL. | Policy Number | MZI-97241415 |
| Producer | JAMES P. REAGAN AGENCY | Effective Date | 04/01/2001 |

**Schedule**

| | | | | | Premium Base |
|---|---|---|---|---|---|
| **Limit of Liability** **$850,000.00** | **Per Item** | **Rate $** | **Per $100 of** | | ☐ **Expenditures** ☐ **Values** |
| | | **Deposit Premium** | **$** | | |
| **$850,000.00** | **Per Occurrence** | **Minimum Premium** | **$** | | |
| **Deductible** | **$1,000/$2,000 plants** | ☐ **Reports** | **Date Report Due** | | |
| | | **Flat Charge** | **$1,000.00** | | |

(If no entry appears above, information required to complete this Endorsement will be shown in the Declarations as applicable to this Endorsement.)

In consideration of the deposit premium shown in the Declarations, the Contractors' Equipment Form attached to this policy is extended to cover Contractors' Equipment leased or rented from others as specified below:

1. **Limit of Liability**

   The Company's liability under this endorsement shall not exceed the Limits of Liability shown in the Declarations as applicable to the Endorsement.

2. **Deductible**

   All claims for Loss arising out of one occurrence shall be adjusted as one claim and the amount specified in the Declarations as applicable to the Endorsement shall be deducted.

3. **Reports** (If indicated above)

   The Insured agrees to keep an accurate record of the expenditures for leasing or renting equipment during the term of the Policy and to report to this

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

*Joe L. Stinnette*

President

Company, or its authorized agent, on or before the thirtieth (30th) day subsequent to the anniversary or termination date of this policy the full amount thereof during the preceding twelve months, or such time as is within the policy period.

The insured agrees that any authorized representative of the Company shall be permitted to examine the Insured's books, records and such policies of insurance as relate to the Insured's business at all reasonable times during the life of this policy and for twelve (12) months after expiration or termination of this policy. Such examination(s) shall not waive nor in any manner affect any of the terms, conditions or limitations of the policy. The furnishing of any statement of expenditures by the Insured or payment of premium and its acceptance by this Company, shall not constitute a waiver of this Company's rights to such examinations or rights to any additional premium which may have been earned.

4.  **Premium**

Deposit premium specified in the Declarations as applicable to this Endorsement is included in the premium stated in the General Declarations of this policy and is due and payable as of the inception date of this policy.

Earned premium shall be computed at the rate specified applied against the premium base shown in the Declarations. Earned premium thus determined shall be applied against the deposit premium. In the event such earned premium is in excess of the deposit premium, an additional premium equal to the difference shall be due and payable to the Company as of the date of such report. In the event that earned premium is less than the deposit premium but more than the minimum premium, a return premium equal to the difference shall be returned to the Insured by the Company.

5.  **Minimum Premium**

The total annual earned premium for this Endorsement shall in no event be less than the minimum premium shown in the Declarations.

6.  **Cessation of Expenditures for Leasing or Rental of Contractors' Equipment**

If, for any reason, expenditures for the lease or rental of equipment shall cease, but such equipment remains the responsibility of the Insured, the Insured shall continue to report such expenditures as would have been incurred, had there been no such cessation

7.  **Privilege to Adjust with Owner**

In the event of Loss to property of others held by the Insured for which claim is made upon the Company, the right to adjust such Loss with the owner or owners of the property is reserved to the Company and the receipt of such owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the Insured for which such payment has been made. If legal proceedings be taken to enforce a claim against the Insured, as respects any such loss or damage, the Company reserves the right, at its option without expense to the Insured, to conduct and control the defense on behalf of and in the name of the Insured. No action of the Company in such regard shall increase the liability of the Company under this policy, nor increase the limits of liability specified in the policy.

8.  **Cancellation**

In the event this policy is cancelled by the insured or by the Company, the Insured agrees to furnish the Company with an accurate statement showing the total amount of all incurred expenses covered by this endorsement, between the date of attachment and up to and including the date of cancellation, and further agrees to pay a premium on this amount at the rate stated in this endorsement.

9.  **Paragraph 8**

**Coinsurance** in the Contractors' Equipment Form attached to this policy does not apply as respects this coverage.

10. **Premium Base**

Wherever the word expenditures is used in this form, it is amended to read **values** when the Values option is shown in the Declarations.

140577 1-83R

# Contractors' Equipment Rental Cost Reimbursement Endorsement
## 140578 01 83
Policy Amendment Commercial Inland Marine

| | | | |
|---|---|---|---|
| Insured | ALL STATE ASPHALT INC. ETAL. | Policy Number | MZI-97241415 |
| Producer | JAMES P. REAGAN AGENCY | Effective Date | 04/01/2001 |

**Schedule**

| Item No. 1. | Description of Equipment ITEMS LISTED ON SCHEDULE A | Identification Marks and Numbers | Limit of Liability $100,000.00 | Measure of Recovery $5,000.00 | per day |
|---|---|---|---|---|---|

**Deductible: $**                    **Waiting Period:**          72 Hour(s)                    Day(s)

(If no entry appears above, information required to complete this Endorsement will be shown in the Declarations as applicable to this Endorsement.)

Coverage provided under the **Contractors' Equipment Form** attached to this supplemental policy is hereby extended as follows:

1. **Subject of Insurance and Perils Insured**

   If there is Loss to the equipment specified in the Declarations as a result of a peril insured by this policy the Company shall be liable for such expense

as may be necessarily incurred in the rental of substitute equivalent equipment in order to continue the normal conduct of the Insured's business. The Company's liability for such expense shall not exceed the amount incurred during the period:

(a) commencing with the date of loss or the expiration of any Waiting Period specified in the Declarations, whichever occurs last, and

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

*Joe L. Stennette*

President

(b)  ending when such equipment has been, or in the exercise of due diligence and dispatch should have been, repaired or replaced by the Insured, whichever occurs first.

Coverage for Loss under this endorsement shall not be limited by the expiration of this policy.

## 2.  Limit of Liability

The Company's liability under this endorsement shall not exceed the Limit of Liability shown in the Declarations subject to the Measure of Recovery specified in the Declarations.

## 3.  Deductible

Each Loss separately occurring shall be adjusted separately. From the amount of each Loss or applicable Limit of Liability shown in the Declarations, whichever is the lesser, the Deductible Amount specified in the Declarations shall be deducted.

## 4.  Waiting Period

The waiting period begins when the Loss has been reported to the Company and continues for the number of hours or days shown in the Declarations while rental expense is being paid. For the purposes of this endorsement, **day(s)** shall be a period of twenty-four (24) consecutive hours in which operations of the Insured are usually performed.

## 5.  Resumption of Operations

It is a condition of this endorsement that, as soon as practicable after any Loss, the Insured shall resume operation of the property herein described and, insofar as possible, reduce or dispense with such additional expenses as are being incurred.

## 6.  Substitution Clause

It is agreed that the Insured will substitute other equivalent equipment at his disposal if any such equipment is idle.

140578 1-83R

# Contractor's Equipment Form - 135154 01 83

Commercial Inland Marine Coverage Form

1. **Property Insured**

   This policy insures Contractors' Equipment and machinery, including spare and repair parts and accessories as specified in the Declarations the property of the Insured or the property of others held by the Insured and for which the Insured is liable.

2. **Property Excluded**

   This policy does not insure:

   a.  any property while leased, loaned or rented to others, or while in the possession of others under an agreement of sale;

   b.  property while waterborne (except during ferry operations);

   c.  aircraft; watercraft (including motors, equipment and accessories); automobiles, motor trucks, trailers, semi-trailers, motorcycles, motor scooters, or any other vehicles designed primarily for highway use;

   d.  plans, blueprints, specifications, designs, records or any similar property.

3. **Perils Insured**

   (Broad Form or Specified Perils Form, as specified in the Declarations)

   a.  Broad Form

      This policy insures against all risks of direct physical loss of or damage to the insured property from any external cause, except as otherwise provided.

   b.  Specified Perils Form

This policy insures against Loss caused by:

   (1)  Fire, lightning, smoke;

   (2)  Explosion, excepting Loss to steam boilers, of the insured property caused by or resulting from explosion, rupture, or bursting of such boilers;

   (3)  Aircraft or objects falling therefrom;

   (4)  Cyclone, tornado, windstorm, hail;

   (5)  Strike, riot and civil commotion;

   (6)  Vandalism or malicious mischief;

   (7)  Collision, derailment, upset or overturning of land conveyances on which the insured property is being transported.

   (8)  Theft.

4. **Perils Excluded**

   This supplement policy does not insure against loss caused by or resulting from:

   under **Broad Form** or **Specified Perils Form,**

   a.  wear and tear, inherent vice, gradual deterioration, latent defects, insects, vermin, dampness or dryness of atmosphere, rust, corrosion, freezing, or other extremes of temperature, mechanical or electrical breakdown or failure, unless Loss by a peril not otherwise excluded ensues and then the Company shall be liable only for such ensuing Loss;

   b.  delay, loss of market, loss of use, or interruption of business;

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

*Jae L. Stennette*
_____
President

c.   infidelity, dishonesty, or any other criminal act of the Insured or any person or persons in the employ of the Insured whether or not such act or acts occurred during the regular hours of employment or service, or others to whom the insured property may be entrusted (carriers for hire excepted);

d.   the weight of a load exceeding the applicable load rating of the equipment according to the load rating chart published by the manufacturer of the equipment; and,

e.   Unexplained loss, mysterious disappearance, or shortage disclosed upon taking inventory;

f.   flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas from: (1) the overflow of inland or tidal waters; (2) the rapid accumulation of runoff of surface waters from any source; or, (3) mudslides which are caused or precipitated by accumulation of water on or under the ground, unless fire or explosion ensues, and then only for the Loss caused by, or resulting from, such fire or explosion, provided the perils of fire or explosion are not excluded elsewhere in this policy. This exclusion shall not apply to insured property in due course of transit.

5.   **Limit of Liability**

The Company's limit of liability for any one Loss shall not exceed:

a.   as respects each item in the schedule in the declarations of this policy the Limit of Liability specified in that schedule applicable to that item;

b.   in the aggregate for all schedule items, the Limit of Liability specified in the Declarations.

6.   **Valuation**

The following provisions shall apply to each item insured as specified in the Declarations;

a.   Actual Cash Value

The Company shall not be liable beyond the actual cash value of the property insured at the time any Loss occurs. The Loss shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and

quality at the place of and immediately preceding the time of such Loss.

b.   Replacement Cost

The Company shall not be liable beyond the retail replacement cost of the property insured at the time any Loss occurs. The Loss shall be ascertained or estimated on the basis of the retail replacement cost of the insured property or property similar in function to that insured, at the place of and immediately preceding the time of such Loss.

7.   **Deductible**

All claims for Loss arising out of one occurrence shall be adjusted as one claim and the amount specified in the Declarations shall be deducted.

8.   **Coinsurance**

Except as otherwise provided, only one of the following provisions shall apply depending upon the **Valuation** basis specified above:

a.   Actual Cash Value

The Company shall be liable in the event of Loss for no greater proportion thereof than the amount hereby insured bears to an amount equal to the percentage specified in the Declarations applied to the actual cash value of the property insured hereunder at the time such Loss shall happen. If this policy insures two or more items, this condition shall apply to each item separately.

b.   Replacement Cost

The Company shall be liable in the event of Loss for no greater proportion thereof than the amount hereby insured bears to an amount equal to the percentage specified in the Declarations applied to the actual retail replacement cost of the property insured hereunder at the time such Loss shall happen. If this policy insures two or more items, this condition shall apply to each item separately.

135154 1-83R

9.  **Extensions of Coverage**

    a.  Additionally Purchased Property

    This policy is extended to cover equipment which has been purchased after the effective date and during the term of this policy provided: 1. the Insured shall report such purchases to the Company within forty-five (45) days from the date of purchase; and, 2. the Insured shall pay premium on such purchases from the date purchases computed pro-rata based on the current policy rate.

    It is agreed that this policy shall cease to cover any such additional item(s) not reported to the Company within the forty-five (45) day period.

    The Company shall not be liable under the provisions of this clause for more than the replacement cost of such property if this coverage is written solely on a replacement cost basis, or for the actual cash value of such property if coverage is written on an actual cash value basis or on a combination of actual cash value and replacement cost.

    In no event will the Company pay for more than 25% of the Limit of Liability specified in the Declarations or $250,000, whichever is the lesser. The Coinsurance clause does not apply to this extension of coverage.

    b.  Debris Removal

    In the event of Loss insured by this policy, coverage shall extend to include expenses incurred in the removal of debris of the damaged property insured hereunder. The liability of the Company as respects such expenses shall not exceed the difference between the amount of Loss otherwise covered by this policy, and the applicable Limit of Liability, plus the lesser of (1) 10% of the applicable Limit of Liability of the items involved, or (2) $100,000.

    In no event shall this policy cover against expenses occasioned by the enforcement of any state or municipal law or ordinance unless such liability is specifically assumed elsewhere in this policy.

    c.  Partial Loss, Waiver of Depreciation

    If, under the Valuation Basis specified above,

Actual Cash Value is stipulated, no deduction for depreciation shall be taken on the adjustment of any partial Loss that does not exceed 20% of the actual cash value of the scheduled item involved. If two or more items are involved in the same occurrence, this condition shall apply to each item separately.

    d.  Employee's Tools

    This policy is extended to cover tools and work clothing of employees for which the Insured may be liable while such tools and work clothing are located at job sites or while in transit to or from job sites in vehicles of the Insured. The Company shall not be liable for more than $5,000 in any one Loss, involving property of a number of employees, nor for more than $500 with respect to property of any one employee. Each such Loss shall be adjusted separately and from the amount of each such adjusted Loss the deductible amount specified in the Declarations shall be deducted. The Coinsurance clause does not apply to this extension of coverage.

    e.  Expendable Supplies

    This policy is extended to cover fuel, oil, grease and similar expendable supplies usual to the Insured's operations. The Company shall not be liable for more than $1,000 in any one Loss, unless such items are specifically covered in the schedule attached to this policy. The Coinsurance clause does not apply to this Extension of coverage.

10. **Recovery - Salvage**

    In the event of any recovery and/or salvage resulting from a Loss covered hereunder, such recovery and/or salvage shall be paid first to the Company up to the full amount of the covered Loss, and thereafter to the Insured.

11. **Reinstatement of Loss Amount**

    The amount of insurance and the applicable Limit of Liability shall not be reduced by the payment of any claim. In the event of payment of claim for total Loss of an item or items specifically scheduled hereon, the unearned premium will be refunded to the Insured or applied to the premium due on item(s) replacing those on which the claim was paid.

12. **Assignment**

    Assignment of interest under this policy shall not

135154 1-83R

bind the Company until its consent is endorsed hereon. If, however, the Insured shall die, or shall be adjudged bankrupt or insolvent and written notice is given to the Company within sixty (60) days after the date of such death or adjudication, this policy shall cover the Insured's legal representatives as insured; provided that notice of cancellation addressed to the Insured named in this policy and mailed to the address shown in this policy shall be sufficient notice

to effect cancellation of this policy.

13. **Definition of Loss**

Wherever the term Loss shall appear in this policy it shall include damage caused by or resulting from physical loss, disaster or casualty to insured property from any external cause.

135154 1-83R

# Installation Floater Declarations – 345174 DEC 08-88
*Commercial Inland Marine*

| Insured | ALL STATE ASPHALT INC. ETAL. | Policy Number | MZI-97241415 |
|---------|------------------------------|---------------|--------------|
| Producer | JAMES P. REAGAN AGENCY | Effective Date | 04/01/2001 |

These Declarations are issued with and are part of coverage form 345174

## Declarations

**Insurance is provided only for those coverages for which an "x" is entered in the applicable box and limits of insuranc: or liability or amounts of insurance are stated in the place provided in these declarations**

### LOCATION AND DESCRIPTION OF PROPERTY COVERED

| | Installation Site | Storage Site |
|---|---|---|

NO LISTED PREMISES FOR ANY ONE STORAGE LOCATION - MATERIALS AND EQUIPMENT USUAL TO A MIXER AND DISTRIBUTION OF ASPHALT CEMENT & TARVIA

Deductible amount $1,000.00                     Coinsurance 100%

| | | Installation Site | Storage Site |
|---|---|---|---|
| 1 | At any one installation site described above | | $1,000,000.0( |
| 2 | At any one storage location described above, other than at the installation site | | $100,000.00 |
| 3. | Any one loss with respect to property in transit | | $100,000.00 |
| 4 | Any one loss, disaster or casualty (involving items 1, 2 or 3 any combination thereof) | | $1,000,000.00 |

Reporting Period:  ☐ Monthly

Reporting period and premium base
☐ Quarterly   ☐ Annual

Premium base:  ☐ Contract Price   ☐ Values   ☐ Sales   ☐
Date report due:

Reporting Rate: _____   Deposit Premium: _____   Minimum Premium: _____

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

_____
Secretary

_____
President

345174DEC 08-88

# Installation Floater - 345174 08 88

Commercial Inland Marine Coverage Form

1.  **Property and Interests Covered**

    This policy covers materials, supplies, machinery, equipment and fixtures, property of the Insured or similar property of others for which the Insured has assumed liability and which the Insured has contracted to install or erect, provided the values of such property of others are included in reports required elsewhere, if this policy is written on a reporting form basis. If this policy is written on a non-reporting basis, such values of property of others shall be included in the computation of the actual cash value in the application of the coinsurance clause appearing elsewhere in this policy.

2.  **Property And Interest Excluded**

    This policy does not cover:

    a.  Machinery, tools and equipment not destined to become a permanent part of the installation or erection, except property the cost of which is included in a contract price provided a premium has been paid thereon;

    b.  Property while on premises owned, leased or controlled by the Insured unless the property is designated for a specific installation covered hereunder;

    c.  Trees, shrubbery, lawns, grass or plants;

    d.  Land or land values;

    e.  Mechanical drawings, architect's drawings, plans, blueprints, designs, records or specifications;

    f.  Property while waterborne, except while in transit on land conveyances on board any regular ferry or carfloat while operating on inland waterways only, and then the Company shall be liable hereunder only for loss or damage directly caused by the stranding, sinking, burning or collision of the ferry, including General Average and Salvage charges;

    g.  Property while airborne, except while in transit on scheduled airlines;

    h.  Property while on the premises of manufacturers or suppliers, whether or not designated for a specific installation covered hereunder;

    i.  Penalties for or expenses incurred as a result of delay in completion of contract terms or conditions of noncompliance with contract terms or conditions or from any guarantee of performance or production;

    j.  Interest on money loaned or advances for installation and charged to the project by the owner(s).

3.  **Duration of Coverage**

    This policy attaches from the time the property is at the risk of the Insured and, except as excluded elsewhere in the policy, covers continuously thereafter during transit, while awaiting and during installation, and terminates when:

    a.  The interest of the Insured in the property ceases, or

    b.  The installation or erection of the property is completed and accepted as satisfactory, or

    c.  This policy expires or is cancelled:

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

_Jae L. Stennette_
President

Whichever of the foregoing conditions first occurs.

4. **Valuation and Limits of Liability**

This Company shall be liable for the actual cash value of the property at the time of loss, including labor and other charges and expenses accrued thereto but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss; but in no event shall this Company be liable in any one loss for more than the limits stated in the Declarations.

5. **Deductible**

Each claim for loss, damage or expense (separately occurring) shall be adjusted separately and from the amount of each such adjusted claim or the applicable limit of liability, whichever is less, the deductible amount specified in the Declarations shall be deducted.

6. **Perils Insured**

This policy insures against all risks of direct physical loss of or damage to the property covered hereunder from any external cause (including General Average and Salvage Charges to shipments covered while waterborne) except as provided elsewhere in this policy.

7. **Perils Not Insured**

This policy does not insure against:

a. Unexplained loss, or shortage disclosed on taking inventory, or mysterious disappearance (except property in the custody of carriers or bailees for hire);

b. Loss, damage or expense caused by, resulting from, contributed to or aggravated by (1) earthquake, (2) volcanic eruption, (3) landslide, or (4) other earth movement; unless fire or explosion ensues and then only for the loss, damage or expense caused by or resulting from such fire or explosion provided the perils of fire or explosion are not excluded elsewhere in this policy. This exclusion does not apply to property in due course of transit;

c. Loss, damage or expense caused by or resulting from inherent vice, latent defect, wear and tear, gradual deterioration, rust, corrosion, dampness or dryness of atmosphere or other extremes of temperature;

d. Loss, damage or expense caused by or resulting from the infidelity and dishonesty, either or both, or any criminal act of the Insured, or any person or persons in the employ of the Insured whether or not such act or acts occurred during the regular hours of employment;

e. Nuclear incident as set forth in C.2. Nuclear Hazard Clause of Inland Marine Conditions;

f. Loss or damage caused by, resulting from, contributing to, or aggravated by flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas from (1) the overflow of inland or tidal waters, (2) the unusual and rapid accumulation of runoff of surface waters from any source, or (3) mudslides which are caused or precipitated by accumulation of water on or under the ground unless fire or explosion ensues from any of the foregoing, and then the Company shall be liable for only such ensuing loss, provided the perils of fire and explosion are not excluded elsewhere in this policy. This exclusion shall not apply to property in due course of transit;

g. The cost of making good faulty or defective workmanship or material, but this exclusion shall not apply to physical damage to other property insured under this policy resulting from such faulty or defective workmanship or material;

h. Loss, damage or expense directly or indirectly caused by or resulting from fault, defect, error or omission in design, plan or specifications, unless fire or explosion ensues, and then only for the loss, damage or expense caused by or resulting from such fire or explosion, provided the perils of fire and explosion are not excluded elsewhere in this policy;

i. Loss, damage or expense to electrical systems, devices, or equipment (including wiring) due to short circuiting, blowout or other electrical injuries or disturbances caused by electrical current artificially generated, unless fire ensues, and then only for the loss, damage or expense caused by or resulting from such ensuing fire, provided the period of fire is not excluded elsewhere in this policy;

j. Loss, damage or expense caused by or resulting from mechanical breakdown or derangement including rupture, bursting or disintegration of:

    (1) Steam boilers, steam pipes, steam turbines, steam engines; or

345174 8-88

(2) Rotating parts of machinery caused by centrifugal force

unless fire ensues, and then only for the loss, damage or expense caused by or resulting from such fire, provided the peril of fire is not excluded elsewhere in this policy;

k.   Loss, damage or expense caused by or resulting from testing;

l.   Loss, damage or expense covered under any guarantee or warranty (expressed or implied) by any contractor, manufacturer or supplier whether or not such contractor, manufacturer or supplier is an Insured under this policy.

8.   **Coinsurance and Minimum Premium**

This clause applies only if this policy is written on a contract price non-reporting basis.  In consideration of the reduced premium at which this policy is written, it is a condition of this policy that in the event of loss, this Company shall be liable for no greater proportion thereof than the amount hereby insured bears to an amount equal to the percentage specified in the Declarations applied to the actual cash value of the property insured hereunder at the time such loss happens. If this policy covers two or more installation sites, the foregoing shall apply to each installation site separately.  This clause shall not apply to Items 3. and 4. as specified in the Declarations.

The total annual earned premium for this policy shall in no event be less than the Minimum Annual Premium included in the estimated premium specified in the Declarations.

9.   **Reports and Premiums**

This clause applies only if this policy is written on a reporting basis as specified in the Declarations attached to this policy.

a.   The Insured agrees to keep an accurate record of the premium base (as specified in the Declarations) and report to this Company, or its authorized agent, not later than thirty (30) days after the day specified in the Declarations and thereafter not later than thirty (30) days after the reporting periods specified, the full amount of such premium base during the preceding reporting period specified in the Declarations during such time as is within the period of this insurance;

b.   The liability of this Company shall not exceed that proportion of loss which the last reported

premium base filed prior to the loss bears to the total premium base;

c.   At the time of any loss, if the Insured has failed to file with this Company the reports as due, the Company shall cover only to the extent of the last report filed, subject otherwise to all other provisions and conditions contained herein.  If such delinquent report is the first report herein required to be filed, liability shall be limited to 90% of the amount for which this Company would otherwise be liable;

If this policy is written on a contract price premium base, notwithstanding the requirement of this policy that premium be paid upon the projected total contract price at risk hereunder, the Company's liability shall in no event exceed the Limits of Liability as specified in this policy.

d.   The deposit premium charged as provisional consideration for the issuance of this policy and included in the total premium paid for this policy, shall be held by the Company and applied against the premium developed by the reports of the premium base under this policy. Earned premium shall  be computed at the rate specified in the Premium Adjustment Information provided with this policy and shall be applied against the deposit premium.  In the event such earned premium is in excess of the deposit premium, an additional premium equal to the difference shall be due and payable to the Company as of the date of such report.  In the event the earned premium is less than the deposit premium, but more than the minimum premium, a return premium equal to the difference shall be due the Insured by the Company.

e.   Minimum earned premium for this policy shall in no event be less than the Minimum Annual Premium included in the total estimated premium specified in the Declarations;

f.   The Insured agrees that any authorized representative of the Company shall be permitted to examine the Insured's books, records and such policies of insurance and bonds as relate to the Insured's business at all reasonable times during the life of this policy and for twelve (12) months after expiration or termination of this policy. Such examination(s) shall not waive nor in any manner affect any of the terms, conditions or limitation of the policy. The furnishing of any statement of premium base by the Insured or payment of premium and its acceptance by this Company's, shall not constitute a waiver of this Company's rights to such examinations or rights to any additional premiums which may have

345174 8-88

been earned.

10. **Adjustment and Payment of Loss**

Loss, if any hereunder, may at the option of the Company, be adjusted with and paid directly to the customers of the Insured, or to the owners of the property.

11. **Other Insurance**

If at the time of loss or damage there is available to named or unnamed Insured or any other interested party any other insurance which would apply in the absence of this policy, the insurance under this policy shall apply only as excess insurance over such other insurance.

12. **Release of Carrier's Liability**

The Insured may accept released value Bills of Lading from Common Carriers.

13. **Territorial Limits**

This policy covers only loss or damage occurring within the 48 contiguous states of the United States, The District of Columbia, The Dominion of Canada or within The State of Alaska or within The State of Hawaii.

14. **Impairment of Recovery Rights**

Any act or agreement by the Insured before or after loss or damage whereby any right of the Insured to recover in whole or in part for loss or damage to property covered hereunder against any carrier, bailee, or other party liable therefore, is released, impaired or lost, shall render this policy null and void, but the Company's rights to retain or recover the premium shall not be affected. The Company is not liable for any loss or damage which, without its written consent, has been settled or compromised by the Insured.

15. **Definition of Contract Price**

**Contract Price** means the total contract or specification value of the construction or installation at completion in accord with the specifications for the project.

# Commercial Fine Arts Floater – CM 0042 DEC 07 90

Commercial Inland Marine

| | | | |
|---|---|---|---|
| Insured | ALL STATE ASPHALT INC. ETAL. | Policy Number | MZI-97241415 |
| Producer | JAMES P. REAGAN AGENCY | Effective Date | 04/01/2001 |

| DESCRIPTION OF PROPERTY | LIMIT OF INSURANCE |
|---|---|
| 1. BRONZE #6 & #2 BROOK TROUT EDITION 15 | $7,000.00 |
| 2. BRONZE #6 RAINBOW TROUT EDITION 15 | $3,600.00 |
| 3. BRONZE #6 BROWN TROUT EDITION 15 | $4,000.00 |
| 4. BRONZE SALMON ON WATER FALL EDITION 15 | $4,500.00 |
| 5. ·PAINTING | $6,000.00 |
| 6. PHEASANT WATER COLOR | $1,000.00 |
| 7. GROUSE WATER COLOR | $1,000.00 |
| 8. 2 SMALL DUCKS WATER COLOR @ $500 EACH | $800.00 |
| 9. 4 NUMBERED PRINTS @ $200 EACH | $800.00 |
| 10.PHEASANT (#600760) | $5,300.00 |
| 11.38" APPLE TREE BOY HUMMELL | $13,100.00 |
| 12.FLORIDA BONE FISH | $5,500.00 |
| 13.ORCA KILLER WHALE | $5,000.00 |
| 14. AMERICAN BALD EAGLE 2 @ $2,000 EACH | $4,000.00 |
| 15.EAGLE HEADS #6 & #7 @ $2,000 EACH | $4,000.00 |
| 16.HAWK ON THE PHEASANT | $4,500.00 |
| 17.GOSHAWK ON PHEASANT | $4,500.00 |
| 18."FIELD FARE" | $3,800.00 |
| 19."BLUE TITS" | $4,800.00 |
| 20.2 "OIL DUCKS" @ $5,000 EACH | $10,000.00 |
| TOTAL | $93,200.00 |
| ALL OTHER COVERED PROPERTY NOT SPECIFICALLY DESCRIBED ABOVE | $93,200.00 |

**DEDUCTIBLE**

| | |
|---|---|
| THE DEDUCTIBLE IS $500 UNLESS OTHERWISE STATED | $500.00 |

**SPECIAL PROVISIONS (IF ANY)**

Contains Copyrighted Material of Insurance Services Office, Inc., 1983, 1984

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

_Jae L. Stennette_

President

# Commercial Fine Arts Coverage Form - CM 00 42 09 00

Policy Amendment(s) Commercial Inland Marine

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words **you** and **your** refer to to the Named Insured shown in the Declarations. The words **we, us** and **our** refer to the Company providing this insurance.

Other words and phrases that appear in bold face have special meaning.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss.

1. COVERED PROPERTY, as used in this Coverage Form, means:

    a. Your fine arts; and

    b. Fine arts of others that are in your care, custody or control;

    described in the Declarations.

2. Property Not Covered

    Covered Property does not include:

    a. Property while on exhibition at fair grounds or on the premises of any national or international exposition; or

    b. Contraband, or property in the course of illegal transportation or trade.

3. Covered Causes of Loss

    Covered Causes of Loss means RISK OF DIRECT PHYSICAL LOSS OR DAMAGE to Covered Property except those causes of loss listed in the Exclusions.

4. Coverage Extension

    Newly Acquired Property

    We will cover other objects of art that you acquire during the policy period, for up to 30 days, but not beyond the end of the policy period.

    The most we will pay in a loss under this Coverage Extension is the lesser of:

    a. 25% of the total of the Limits of Insurance shown in the Declarations for all individually listed and described items; or

    b. $10,000.

    You will report such property within 30 days from the date acquired and pay any additional premium that is due. If you do not report that property to us, coverage will end automatically 30 days after the date you acquire the property or at the end of the policy period, whichever occurs first.

    The Coinsurance Additional Condition does not apply to this Coverage Extension.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    a. Governmental Action

        Seizure or destruction of property by order of governmental authority.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

_____
Secretary

_____
President

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

b.  Nuclear Hazard

(1)  Any weapon employing atomic fission or fusion; or

(2)  Nuclear reaction or radiation, or radioactive contamination from any other cause. But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this Coverage Form.

c.  War and Military Action

(1)  War, including undeclared or civil war;

(2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3)  Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

Exclusions B.1.a through B.1.c. apply whether or not the loss event results in widespread damage or affects a substantial area.

2.  We will not pay for loss or damage caused by or resulting from any of the following:

a.  Delay, loss of use, loss of market or any other consequential loss.

b.  Dishonest acts by:

(1)  You, your employees or authorized representatives;

(2)  A manager or a member if you are a limited liability company;

(3)  Anyone else with an interest in the property, or their employees or authorized representatives; or

(4)  Anyone else to whom the property is entrusted.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

But this exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire.

c.  Breakage of art glass windows, statuary, glassware, bric-a-brac, marble, porcelain and similar fragile property.

But we will pay for such loss or damage caused directly by fire, lightning, explosion, windstorm, earthquake, flood, vandalism, aircraft, rioters, strikers, theft or attempted theft, or by accident to the vehicle carrying the property, if these causes of loss would be covered under this Coverage Form.

d.  Any repairing, restoration or retouching of the Covered Property.

e.  Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

f.  Unauthorized instructions to transfer property to any person or to any place.

g.  Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3.  We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the loss or damage caused by that Covered Cause of Loss.

a.  Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage.

b.  Wear and tear, any quality in the property that causes it to damage or destroy itself, gradual deterioration; insects, vermin or rodents.

C.  **Limits of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

D.  **Deductible**

We will not pay for loss or damage in any one occurrence until the amount of the adjustment loss or damage before applying the applicable Limits of Insurance exceeds the Deductible shown in Declarations. We will then pay the amount of the adjustment loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

E.  **Additional Conditions**

1.  Valuation

General Condition F. Valuation in the Commercial Inland Marine Conditions is replaced by the following:

a.  The value of each item of property that is individually listed and described in the Declarations is the applicable Limit of Insurance shown in the Declarations for that item.

b.  The value of all other Covered Property, including newly acquired property, will be the least of the following amounts:

(1)  The actual cash value of that property;

(2)  The cost of reasonable restoring that property to its condition immediately before loss or damage; or

(3)  The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

2.  The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

a.  Coverage Territory

We cover property wherever located within:

(1)  The United States of America (including its territories and possessions);

(2)  Puerto Rico; and

(3)  Canada.

b.  Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

We will not pay the full amount of any loss if the value of Covered property, except property in transit, at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1)  Multiply the value of Covered Property, except property in transit, a the time of loss by the Coinsurance percentage;

(2)  Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3)  Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4)  Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance , whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

c.  Packing and Unpacking

You agree that Covered Property will be packed and unpacked by competent packers.

d.  Pair or Sets

Loss Condition G. Pair, Sets or Parts in the Commercial Inland Marine Conditions is replaced by the following:

(1)  In case of total loss or damage of any items that are part of a pair or set that is individually listed and described in the Declarations, we will pay the full Limit of Insurance shown in the Declarations for that pair or set. You will surrender

to us the remaining items of the pair or set.

(2) In case of loss or damage to any part of a pair or set that is not individually listed and described in the Declarations, we may:

(a) Repair or replace any part to restore the pair or set to its value before the loss or damage; or

(b) Pay the difference between the value of the pair or set before and after the loss or damage.

CM0042 9-00
Copyright, Insurance Services Office, Inc., 1999

# Inland Marine Transportation Floater - CM 70 73 08 89 DEC

Commercial Inland Marine

| | | | |
|---|---|---|---|
| Insured | ALL STATE ASPHALT INC. ETAL. | Policy Number | MZI-97241415 |
| Producer | JAMES P. REAGAN AGENCY | Effective Date | 04/01/2001 |

**Schedule**

Insurance is provided only for those coverages for which a limit of liability is show in the place provided in the Declarations.

**Description of Property Covered**

**Lawful goods and merchandise consisting of ASPHALT CEMENT & TARVIA**

| | | Limit of Liability | Deductible |
|---|---|---|---|
| 1. | In the custody of a common carrier by motor vehicle, including connecting carriers | $Not Covered | $ |
| 2. | In the custody of any railroad | $Not Covered | $ |
| 3. | In the custody of any licensed airline | $Not Covered | $ |
| 4. | In transit in, on or towed by any vehicle which you own, lease or operate | $10,000.00 | $1,000.00 |

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

_Jae L. Stinnette_

President

CM7073 8-89 DEC

# Inland Marine Transportation Floater - CM 70 73 08 89

Policy Amendment Commercial Inland Marine

1. **Property We cover**

   We cover the property which is described in the Declarations while in the following situations:

   A.  In the custody of a common carrier by motor vehicle, including connecting carriers;

   B.  In the custody of any railroad;

   C.  In the custody of any licensed airline or;

   D.  In transit in, on or towed by any vehicle which you own, lease or operate.

   We do not cover property excluded under PROPERTY WE DO NOT COVER or which is excluded elsewhere in this policy or where no Limit of Liability is shown. We refer to the property specified in the Declarations as Covered Property.

2. **Property We Do Not Cover**

   WE DO NOT COVER any of the following property unless Coverage is specifically included in the Declarations applicable to this Coverage Form or endorsed elsewhere on this policy:

   A.  Property you ship by mail from the time such property passes into the custody of the U. S. Postal Service;

   B.  Property that is waterborne except when on a transporting land conveyance aboard any regular licensed ferry on an inland waterway, and then to include general average and salvage charges for which you may be liable.

   C.  Live animals, except we pay for claims arising from death or injury rendering death immediately necessary, when caused by:

   (1)  fire, lightning, windstorm, flood, riot, riot attending a strike,

   (2)  collision, derailment, upset, or overturn of the transporting vehicle, or

   (3)  the stranding, sinking, burning or collision of any regular ferry operations on inland waterways;

   D.  Export shipments after such shipments are loaded on board an exporting conveyance on the date such export shipments are covered by a Marine Insurance Policy or on import shipments until the Marine Coverage ceases.

   E.  Accounts, bills, deeds, notes, securities, evidences of debt, letters of credit, tickets, passports, documents, manuscripts, mechanical drawings, valuable papers of any kind, money, currency, bullion, precious stones, furs, jewelry, paintings, statuary or other works of art.

3. **Attachment of Coverage**

   We will provide coverage from the time the Covered Property leaves the initial point of shipment and continuously thereafter while in the ordinary course of transit until delivered at destination.

4. **Causes of Loss We Cover**

   We cover risks of direct physical loss to the Covered Property from any external cause. We do not cover those causes excluded under CAUSES OF LOSS WE DO NOT COVER or excluded elsewhere in this policy.

5. **Causes of Loss We Do Not Cover**

   In addition to any exclusions appearing anywhere in the policy to which this Coverage Form is attached, the following exclusions will apply:

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

Secretary                                        President

We do not cover against loss or expense caused by the following perils or occurrences, whether or not any other cause or event contributes in any sequence to a loss:

A. Wear and tear, inherent vice, gradual deterioration, insects or vermin;

B. Leakage, breakage, marring or scratching. This exclusion shall not apply if such leakage, breakage, marring or scratching is direct result of:

    (1) fire, lightning, windstorm, flood

    (2) Collision, derailment, upset or overturn of the transporting vehicle, or

    (3) the stranding, sinking, burning or collision of any regular ferry operating on inland waterways;

C. Delay, or any loss of market for the Covered Property that occurs from the interruption of business; or any consequential loss that is beyond the direct physical loss of the Covered Property;

D. Dishonest or criminal act by you, any of your partners, employees, or any other person to whom you entrust the Covered Property for any purpose other than a carrier for hire.

## 6. Limits of Liability

The Limit of Liability shown in the Declarations is the maximum amount we will pay. The amounts shown shall apply to any single covered loss, disaster or casualty and includes any covered expense or other covered charges.

## 7. Deductible

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Liability.

If more than one Deductible is applicable under this Coverage Form, we will only apply the highest amount that is applicable.

## 8. How The Covered Property Will Be Valued in Event of Loss or Damage

The value of the Covered Property at the time loss occurs will be established as follows:

A. Covered Property shipped to you or on your behalf will be valued at your invoice cost plus any costs or charges (including your commission as a selling agent) that have accrued and are legally due.

B. Covered Property you have sold or property you ship on behalf of others will be valued at your selling invoice plus any guaranteed, prepaid or advanced freight.

C. Covered Property not under invoice will be valued at actual cash value at the point of its destination on the date the loss occurs less any charges saved that would have been due and payable upon delivery at destination.

## 9. Territorial Limits

Coverage under this policy shall apply only to loss or damage occurring within the 48 contiguous states of the United States, the District of Columbia, Canada, or within the State of Alaska or within the State of Hawaii.

## 10. Release of Carrier Liability

Notwithstanding the **Impairment of Recovery Rights** clause contained in the Conditions Form attached to this policy you are permitted to accept released value Bills of Lading from carriers for hire.

## 11. Additional Coverage We Provide

A. F.O.B. Shipments

Coverage is provided for your contingent interest in Covered Property you sell to others that is shipped to them at their risk of loss. However, this coverage only applies if you cannot collect on the bill of sale because the property has been damaged by a covered cause of loss and your customer has refused or is unable to pay.

B. Cargo Legal Liability

Subject to all provisions of this policy we cover your legal liability while you are acting as a carrier for hire for loss to property not owned by you. We will not be liable under this extension

for more than the lessor of:

(1) $10,000 or

(2) the Limit of Liability provided for Property in Transit by vehicles which you own, lease or operate.

Coverage under this extension shall not increase the Limits of Liability shown in the Declarations to which this form is attached.

C.  Moving Equipment

Coverage is provided for **Moving Equipment** you own or for which you are liable which is lost, damaged or destroyed in a Covered Loss. We will not be liability under this extension for more than $5,000. Coverage under this extension shall be in addition to any other Limits of Liability provided by this Coverage Form.

D.  Broad Form Brands and Labels

If branded or labeled merchandise covered by this policy is damaged as a result of a covered loss and we elect to take any part at the agreed or appraised value, you may stamp **salvage** on the merchandise or its containers, or may remove the brands or labels if such stamp or removal will not physically damage the merchandise, but, shall relable the merchandise or container in compliance with any requirements of law. The expense of such stamping or removal will be charged to salvaging expense.

12. **Definitions**

A.  **Loss** means any destruction or damage caused by a covered cause of loss external to the covered property.

B.  **Moving Equipment** means pads, dollies, pallets, hand trucks and other similar moving equipment but excluding self-propelled vehicles.

AAIS
COP-100  Ed 2.0
Page 1 of 21

# COMMERCIAL OUTPUT PROGRAM -- PROPERTY COVERAGE PART

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Commercial Output Program. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Computers" means:

   a. "hardware" owned by "you" or in "your" care, custody, or control; or

   b. "software".

4. "Covered locations" means any location or premises where "you" have buildings, structures, or business personal property covered under this coverage.

5. "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

6. "Fine arts" means paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit.

7. "Hardware" means a network of electronic machine components capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

8. "Limit" means the amount of coverage that applies.

9. "Mobile equipment" means:

   a. contractors' equipment or similar equipment of a mobile or floating nature;

   b. self-propelled vehicles designed and used primarily to carry mounted equipment; or

   c. vehicles designed for highway use that are unlicensed and not operated on public roads.

10. "Pollutant" means:

    a. any solid, liquid, gaseous or thermal irritant, or contaminant;

    b. electromagnetic (visible or invisible) or sound emission; or

    c. waste, including materials to be disposed of as well as recycled, reclaimed, or reconditioned.

11. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

12. "Software" means:

   a. processing, recording, or storage media used for electronic data processing operations. This includes films, tapes, cards, discs, drums, cartridges, or cells.

   b. data, including instructions or information, stored on processing, recording, or storage media used for electronic data processing operations.

13. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

   Falling objects does not include loss to business personal property in the open, to the interior of buildings or structures, or business personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object.

   Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

14. "Terms" are all provisions, limitations, exclusions, conditions, and definitions that apply.

15. "Valuable papers and records" means inscribed, printed, or written documents; manuscripts; or records. This includes abstracts, books, deeds, drawings, films, maps, or mortgages.

16. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow. It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

"We" cover direct physical loss to covered property at "covered locations" caused by a covered peril. "We" cover the following types of property.

### BUILDING PROPERTY

This means buildings and structures including:

1. completed additions;

2. fixtures, machinery, and equipment which are a permanent part of a covered building or structure;

3. outdoor fixtures;

4. personal property owned by "you" and used to maintain or service a covered building or structure or its premises. This includes air-conditioning equipment; fire extinguishing apparatus; floor coverings; and appliances for refrigerating, cooking, dish washing, and laundering;

5. if not covered by other insurance:

   a. buildings and additions to buildings under construction, alteration, and repair;

In addition, "we" do not pay for loss to business personal property caused by deficiencies or defects in design, specifications, materials, or workmanship, or caused by latent or inherent defects.

"We" do cover any resulting loss caused by a covered peril unless the resulting loss itself is excluded.

f.   **Electrical Currents** -- "We" do not pay for loss caused by arcing or by electrical currents other than lightning. If a fire results, "we" cover only the loss caused by fire.

"We" do cover the direct loss by a covered peril which occurs at "covered locations" as a result of any power interruption or other utility services.

g.   **Explosion** -- "We" do not pay for loss caused by explosion of steam boilers, steam pipes, steam turbines, or steam engines that "you" own or lease or that are operated under "your" control. If a fire or combustion explosion results, "we" do cover the resulting loss. "We" also cover loss caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

h.   **Freezing** -- "We" do not pay for loss caused by water; other liquids; powder; or molten material that leaks or flows from plumbing, heating, air-conditioning systems, or appliances other than fire protective systems caused by freezing. This does not apply if "you" use reasonable care to maintain heat in the building or structure; or "you" drain the equipment and turn off the supply if the heat is not maintained.

i.   **Increased Hazard** -- "We" do not pay for loss occurring while the hazard has been materially increased by any means within "your" knowledge or "your" control.

j.   **Loss of Use** -- "We" do not pay for loss caused by loss of use, business interruption, delay, or loss of market.

k.   **Mechanical Breakdown** -- "We" do not pay for loss caused by mechanical breakdown or rupturing or bursting of moving parts of machinery caused by centrifugal force. "We" do cover any resulting loss caused by a "specified peril", breakage of building glass, or elevator collision.

This exclusion does not apply to "computers".

l.   **Neglect** -- "We" do not pay for loss caused by "your" neglect to use all reasonable means to save covered property at and after the time of loss.

"We" do not pay for loss caused by "your" neglect to use all reasonable means to save and preserve covered property when endangered by a covered peril.

m.   **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

n.   **Seepage** -- "We" do not pay for loss caused by continuous or repeated seepage or leakage of water or steam that occurs over a period of 14 days or more.

o. **Settling, Cracking, Shrinking, Bulging, or Expanding** -- "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, footings, foundations, walls, ceilings, or roofs. "We" do cover any resulting loss caused by a "specified peril" or breakage of building glass.

This exclusion does not apply to "computers" and "mobile equipment".

p. **Smog, Smoke, Vapor, or Gas** -- "We" do not pay for loss caused by smog, smoke, vapor, or gas from agricultural smudging or industrial operations.

This exclusion does not apply to "computers" and "mobile equipment".

q. **Temperature/Humidity** -- "We" do not pay for loss to personal property caused by humidity or changes in or extremes of temperature. "We" will cover any resulting loss caused by "specified perils" or breakage of building glass.

However, "we" do pay for loss to "computers" that results from direct physical damage by a covered peril to the air conditioning system that services "your" "computers".

r. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

s. **Wear and Tear** -- "We" do not pay for loss caused by wear and tear, marring, or scratching.

"We" do pay for any resulting loss caused by a "specified peril" or breakage of building glass.

t. **Weather** -- "We" do not pay for loss caused by weather conditions if the weather conditions contribute in any way with a cause or event excluded in paragraph 1. above.

"We" do pay for any resulting loss caused by a covered peril unless the resulting loss itself is excluded.

## ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS

1. **Accounts Receivable** -- "We" do not cover loss to accounts receivables that is a result of:

   a. an error or omission in bookkeeping, accounting, or billing;

   b. "your" discovery of a discrepancy in "your" books or records if an audit or inventory computation is necessary to prove the factual existence of the discrepancy.

2. **Animals** -- "We" do not cover loss to animals, including birds and fish, except death or destruction of animals held for sale caused by "specified perils" or breakage of building glass.

3. **Boilers** -- "We" do not cover loss to steam boilers, steam pipes, steam turbines, or steam engines caused by any condition or occurrence within such equipment. "We" do cover loss to such equipment caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

"We" do not cover loss to hot water boilers or heaters caused by any condition or occurrence within such equipment other than explosion. This exclusion includes bursting, cracking, or rupturing.

4. **Furs** -- "We" do not cover furs or fur garments for loss by theft for more than $10,000 total in any one occurrence.

5. **Glassware/Fragile Articles** -- "We" do not cover breakage of fragile articles such as glassware, statuary, porcelains and bric-a-brac, except as a result of "specified perils" or breakage of building glass. This does not apply to glass that is a part of a building or structure, bottles or other containers held for sale, or lenses of photographic and scientific instruments.

6. **Gutters and Downspouts** -- "We" do not cover loss to gutters and downspouts caused by the weight of ice, sleet, or snow.

7. **Interior of Buildings** -- "We" do not cover loss to the interior of buildings or structures or to personal property in the buildings or structures caused by rain, snow, sleet, ice, sand, or dust, unless:

   a. entering through openings made by a "specified peril"; or

   b. the loss is caused by the thawing of snow, sleet, or ice on the building or structure.

8. **Jewelry, Watches, Jewels, Pearls, Precious Stones, and Metals** -- "We" do not cover more than $10,000 total in any one occurrence for loss by theft of jewelry; watches; watch movements; jewels; pearls; precious or semi-precious stones; gold, silver, or other precious metals; or items consisting primarily of precious metals. This limitation does not apply to items of jewelry or watches worth $100 or less.

9. **Missing Property** -- "We" do not cover missing property when the only proof of loss is unexplained or mysterious disappearance, or shortage discovered on taking inventory, or other instance where there is no physical evidence to show what happened to the property.

This exclusion does not apply to property in the custody of carriers for hire.

10. **Personal Property in the Open** -- "We" do not cover loss to personal property in the open caused by rain, snow, ice, or sleet.

   This exclusion does not apply to "mobile equipment" or to property in the custody of carriers for hire.

11. **Stamps, Tickets, and/or Letters of Credit** -- "We" do not cover more than $5,000 total in any one occurrence for loss to stamps, tickets (including lottery tickets held for sale), or letters of credit by theft.

12. **Transferred Property** -- "We" do not cover loss to property that has been transferred to a person or to a place away from the "covered locations" on the basis of unauthorized instructions.

13. **Valuable Papers and Records** -- "We" do not cover loss to "valuable papers and records" caused by errors or omissions in processing or copying except as a result of "specified perils" or breakage of building glass.

# OTHER COVERAGES

1. **Collapse** -- "We" pay for loss caused by direct physical loss involving collapse of a covered building or structure or any part of a building or structure caused only by one or more of the following:

   a. "specified perils"; all only as covered in Commercial Output Program Coverages;

   b. hidden decay;

   c. hidden insect or vermin damage;

AAIS
COP-100  Ed 2.0
Page 3 of 21

b. materials, equipment, supplies, and temporary structures, on or within 1,000 feet of "covered locations", used for the construction, alteration, and repair of buildings or additions to buildings;

6. building glass;

7. the following property if it is located on or within 1,000 feet of a covered building or structure:

a. radio and television towers, antennas, satellite dishes, masts, lead-in wiring, and guy wires. This includes foundations and any other property that is permanently attached to any of these types of property;

b. awnings or canopies; and

c. fences.

8. signs, whether or not they are attached to covered buildings, or structures.

## BUSINESS PERSONAL PROPERTY

This means "your" business personal property in buildings or structures at "covered locations" or in the open (or in vehicles) on or within 1,000 feet of "covered locations". This includes:

1. "your" use interest as a tenant in improvements to the buildings or structures. Improvements are fixtures, alterations, installations, or additions:

a. to a building or structure "you" occupy but do not own; and

b. made or acquired at "your" expense and which cannot be legally removed by "you".

2. leased personal property which "you" have a contractual responsibility to insure.

3. "your" interest in personal property of others to the extent of "your" labor, material, and services.

4. "computers", if not covered by other insurance.

5. personal property which will become a part of "your" installation, fabrication, or erection project while:

a. at the site of installation, fabrication or erection; or

b. while in temporary storage awaiting installation, fabrication, or erection.

Coverage under this provision is not restricted to buildings or structures at "covered locations" or within 1,000 feet of "covered locations".

6. "mobile equipment", if not covered by other insurance. Coverage under this provision is not restricted to buildings or structures at "covered locations" or within 1,000 feet of "covered locations".

7. personal property of others. This means personal property of others that is in "your" care, custody, or control.

Personal property of others includes property that is sold under an installation agreement where "your" responsibility continues until the property is accepted by the buyer.

"Our" payment for loss to personal property of others will only be for the benefit of the owners of the personal property.

AAIS
COP-261  Ed 1.0
Page 1 of 1

# LOSS PAYABLE SCHEDULE

Indicate applicable provision

☒ Loss Payable
☐ Lender's Loss Payable
☐ Contract of Sale

---

## SCHEDULE

| Covered Location | Covered Property | Name and Address of Loss Payee |
|---|---|---|
| 1. NOT APPLICABLE | COP-226 | BANK OF BOSTON<br>P.O. BOX 1391<br>BOSTON, MA  02140 |
| 2. NOT APPLICABLE | COP-226 | THE BANK OF WESTERN MASS<br>9 STATE STREET<br>SPRINGFIELD, MA  01101-4950 |

**COP-261  Ed 1.0**

Copyright MCMXCV, American Association of Insurance Services

## PROPERTY NOT COVERED

1. **Airborne or Waterborne Property --** "We" do not cover airborne or waterborne personal property unless the property is being transported by regularly scheduled airlines or ferry service.

2. **Aircraft or Watercraft --** "We" do not cover aircraft or watercraft (including their motors, equipment, and accessories) that are operated principally away from "covered locations". However, "we" do cover:

   a. aircraft or watercraft (including their motors, equipment, and accessories) that "you" manufacture, process, warehouse, or hold for sale; and

   b. rowboats or canoes out of water at "covered locations".

3. **Animals --** "We" do not cover animals, including birds and fish, unless owned by others and boarded by "you". "We" do cover animals "you" own and hold for sale.

4. **Automobiles and Vehicles --** "We" do not cover automobiles, motor trucks, tractors, trailers, and similar conveyances designed and used for over-the-road transportation of people or cargo.

   "We" do cover:

   a. "mobile equipment" described as Business Personal Property; and

   b. automobiles and vehicles that "you" manufacture, process, or warehouse. However, "we" do not cover automobiles or vehicles held for sale.

5. **Contraband --** "We" do not cover contraband or property in the course of illegal transportation or trade.

6. **Crops --** "We" do not cover grain, hay, straw, or other crops when outdoors.

7. **Exports and Imports --** "We" do not cover exported or imported property that is covered under any ocean marine cargo insurance policy or any similar policy that anyone has obtained covering exports and imports.

8. **Land, Water, or Cost of Excavation --** "We" do not cover:

   a. land, including land on which the covered property is located;

   b. underground or surface water; or

   c. cost of excavations, grading, or filling.

9. **Money and Securities --** "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

10. **Property More Specifically Insured --** "We" do not cover property which is more specifically insured in whole or in part by any other insurance. "We" do cover the amount in excess of the amount due from the more specific insurance.

11. **Property of Others --** "We" do not cover property of others for which "you" are responsible as:

    a. a carrier for hire; or

    b. an arranger of transportation. This includes carloaders, consolidators, brokers, freight forwarders, or shipping associations.

12. **Property You Have Sold --** "We" do not cover property that "you" have sold after it has been delivered. This does not include property which "you" have sold under an installation agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril. This coverage does not include costs to:

   a. extract "pollutants" from land or water; or

   b. remove, restore, or replace polluted land or water.

   "We" will not pay any more under this coverage than 25% of the amount "we" pay for the direct loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

   However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

   "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Emergency Removal** -- "We" pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered peril. "We" will pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to ten days after the property is first moved, but does not extend past the date on which this policy expires.

3. **Fire Department Service Charges** -- "We" pay up to $5,000 to cover "your" liability, assumed by contract or agreement prior to the loss, for fire department service charges.

   This coverage is limited to charges incurred when the fire department is called to save or protect covered property from a covered peril.

   No deductible applies.

4. **Pollutant Cleanup and Removal** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

   "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

   The most "we" pay for each site or location is $25,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

5. **Recharge of Fire Protection Equipment** -- "We" pay up to $10,000 to cover "your" incurred expenses to recharge automatic fire protection equipment when the equipment is discharged to fight a fire or as a result of a covered peril.

## SUPPLEMENTAL COVERAGES

"We" provide the following supplemental coverages and unless otherwise stated, each supplemental coverage:

    a.  applies to loss caused by a covered peril;

    b.  applies to covered property in or on buildings or structures at "covered locations" or in the open (or in vehicles) within 1,000 feet of the "covered locations"; and

    c.  is not subject to and not considered in applying coinsurance when coinsurance conditions are added to this coverage.

1.  **Arson Reward** -- "We" pay up to $5,000 as reward for information that leads to an arson conviction. The conviction must be for a covered fire loss. The amount "we" pay is not increased by the number of persons involved in providing the information.

2.  **Brands or Labels Expense** -- If covered business personal property is damaged, "we" have the option to take all or any part of the damaged business personal property at the agreed or appraised value. "You" may stamp salvage or remove any brands or labels from the property or its containers. "You" must not damage the property or containers when "you" remove the brands or labels. "You" must relabel the merchandise or its containers if required by law.

    "We" pay up to $50,000 for "your" expenses for stamping or removing brands or labels.

3.  **Consequential Loss** -- "We" pay up to $10,000 for the consequential loss of undamaged business personal property. Consequential loss means the loss of value of an undamaged part or parts of a product which becomes unmarketable. It must be unmarketable due to a physical loss to another part or parts of the product caused by a covered peril.

4.  **Foundations of Buildings, Pilings, and Underground Pipes** -- "We" pay up to $250,000 or 10% of the "limit" shown on the "declarations" for covered property at any one "covered location", whichever is less for loss to:

    a.  foundations of buildings, structures, machinery, or boilers if their foundations are below:

        1)  the lowest basement floor; or
        2)  the surface of the ground, if there is no basement;

    b.  pilings, piers, wharves, docks, or retaining walls;

    c.  underground pipes, flues, or drains.

5.  **Inventory and Appraisals Expenses** -- "We" pay up to $50,000 for reasonable expenses, for the taking of inventory and appraisals, incurred by "you" at "our" request to assist "us" in the determination of the amount of a covered loss.

    "We" do not pay for:

    a.  any expenses incurred under the Other Conditions, Appraisal section of this coverage; or

    b.  any public adjusters' fees.

6. **Newly Acquired Buildings** -- When the Locations and Scheduled Locations Endorsements are attached to this coverage, "we" cover "your" buildings or structures being built or that "you" acquire during the policy period.

This coverage applies for 90 days from the date "you" acquire or begin to construct the building or structure or until "you" report the newly acquired property to "us", whichever occurs first. This coverage does not go beyond the end of the policy period.

"You" must pay additional premium due from the date construction is started or "you" acquire the property.

"We" pay up to $500,000 for loss to each building or structure in any one occurrence.

7. **Ordinance or Law** -- When a covered peril occurs to covered buildings or structures, "we" cover:

a. loss caused by the enforcement of any ordinance, law, or decree that:

1) requires the demolition of undamaged parts of covered buildings or structures that are damaged or destroyed by a covered peril;

2) regulates the construction or repair of buildings or structures, or establishes building, zoning, or land use requirements at "covered locations"; and

3) is in force at the time of loss.

b. the increased cost to repair, rebuild, or construct covered buildings or structures as a result of the enforcement of building, zoning or land use ordinance, law, or decree. If covered buildings or structures are repaired or rebuilt, they must be intended for similar

occupancy as the current property, unless otherwise required by building, zoning or land use ordinance, law, or decree.

c. the cost to demolish and clear the site of undamaged parts of covered buildings or structures that are damaged or destroyed by a covered peril as a result of the enforcement of the building, zoning or land use ordinance, law, or decree.

"We" do not cover the costs associated with the enforcement of any ordinance, law, or decree that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants".

"We" do not cover the increased cost of construction until the covered building or structure is actually repaired or replaced and unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

If the covered building or structure is repaired or replaced, "we" pay the lesser of:

a. the amount "you" actually spend to demolish and clear the site, plus the amount "you" actually spend to repair, rebuild, or construct the property but not for more than buildings or structures of the same height, floor area, and style; or

b. $50,000.

If the covered building or structure is not repaired or replaced, "we" pay the lesser of:

a. the amount "you" actually spend to demolish and clear the site, plus the cost to replace the damaged or destroyed property with other property:

1) of like kind, and quality;
2) of the same height, floor area, and style; and
3) used for the same purpose; or

b. $50,000.

8. **Personal Effects** -- "We" pay up to $10,000 at each "covered location" for personal effects owned by "you", "your" officers, "your" partners, or "your" employees.

9. **Personal Property - Acquired Locations** -- When the Locations and Scheduled Locations Endorsements are attached to this coverage, "we" cover "your" business personal property at locations that "you" acquire during the policy period. "We" do not cover personal property at fairs or exhibitions except as provided under Property On Exhibition.

This coverage applies for 90 days from the date "you" acquire the location or until "you" report the acquired location to "us" whichever occurs first. This coverage does not go beyond the end of the policy period.

"You" must pay any additional premium due from the date "you" acquire the location.

"We" pay up to $250,000 for loss to business personal property at acquired locations in any one occurrence.

10. **Trees, Shrubs, and Plants** -- "We" pay up to $50,000 including debris removal expenses, for "your" outdoor trees, shrubs, plants, and lawns except for those held for sale. "We" only cover loss caused by:

a. fire;

b. lightning;

c. explosion;

d. riot or civil commotion; or

e. falling objects.

## SUPPLEMENTAL MARINE COVERAGES

"We" provide the following Supplemental Marine Coverages and unless otherwise stated, each supplemental marine coverage:

a. applies to loss caused by a covered peril; and

b. is not subject to and not considered in applying coinsurance when coinsurance conditions are added to this coverage.

1. **Accounts Receivable** -- "We" pay up to $50,000 to cover losses and expenses that "you" incur as a result of loss or damage to "your" records of accounts receivable.

Losses and expenses under this coverage means:

a. all sums due "you" from customers, provided "you" are unable to effect collection;

b. interest charges on any loan used to offset impaired collections pending prepayment of such sums made uncollectible by loss or damage;

c. collection expenses in excess of normal collection costs made necessary because of loss or damage;

d. other reasonable expenses incurred by "you" in recreating records of accounts receivable following such loss or damage.

2. **Fine Arts** -- "We" pay up to $50,000 for "your" "fine arts" at "covered locations".

3. **Property on Exhibition** -- "We" pay up to $50,000 for covered business personal property while temporarily on display or exhibit at locations "you" do not regularly occupy.

4. **Property in Transit** -- "We" pay up to $50,000 in any one occurrence for covered business personal property (other than property in the care, custody, or control of "your" sales representatives) while in transit, regardless if the loss involves one or more vehicles, conveyances, containers, trailers, or any combination of these.

5. **Sales Representative Samples** -- "We" pay up to $50,000 for samples of "your" stock in trade (including containers) and similar property of others.

   "We" cover samples of "your" stock in trade while the property is:

   a. in the custody of "your" sales representatives and agents;

   b. in "your" custody while acting as a sales representative; or

   c. in transit between "your" "covered locations" and "your" sales representatives.

6. **Valuable Papers and Records - Cost of Research** -- "We" pay up to $50,000 for the cost of research or other expenses necessary to reproduce, replace, or restore lost information on lost or damaged "valuable papers and records". This includes those "valuable papers and records" which exist on electronic or magnetic media for which duplicates do not exist.

# PERILS COVERED

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

# PERILS EXCLUDED

1. "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Ordinance or Law** -- Except as provided under Supplemental Coverages, "we" do not pay for loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing its debris.

   b. **Earth Movement or Volcanic Eruption** -- "We" do not pay for loss caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to: earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

"We" do cover direct loss by fire, explosion, or "volcanic action" resulting from either earth movement or eruption, explosion, or effusion of a volcano.

All volcanic eruptions that occur within a 168 hour period shall be considered a single loss.

This exclusion does not apply to "computers", "mobile equipment", and the Supplemental Marine Coverages.

c. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

d. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. **Utility Failure** -- "We" do not pay for loss caused by interruption of power or other utility services resulting from any cause if the interruption takes place away from the "covered locations". Interruption includes reduced or increased voltage, low or high pressure, or other interruptions of normal services.

"We" do cover the direct loss by a covered peril which occurs at "covered locations" as a result of any power interruption.

This exclusion does not apply to "computers", "mobile equipment", and the Supplemental Marine Coverages.

f. **War** -- "We" do not pay for loss caused by war. This means:

1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;

2) a warlike act by a military force or by military personnel;

3) the destruction, seizure, or use of the property for a military purpose; or

4) the discharge of a nuclear weapon even if it is accidental.

g. **Water** -- "We" do not pay for loss caused by water. This means:

1) flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from these whether driven by wind or not;

2) water that backs up through a sewer or drain; and

3) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into a building or structure, sidewalk, driveway, foundation, swimming pool, or other structure.

If fire, explosion, or sprinkler leakage results, "we" do cover the resulting loss.

This exclusion does not apply to "computers", "mobile equipment", and the Supplemental Marine Coverages.

2.  "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

a.  **Animals** -- "We" do not pay for loss caused by animals, including birds, insects, or vermin. "We" do cover any resulting loss caused by a "specified peril" or breakage of building glass.

b.  **Collapse** -- "We" do not pay for loss caused by collapse, except as provided under the Other Coverages, Collapse. If loss caused by a covered peril results at the "covered locations" "we" will pay for that resulting loss.

   This exclusion does not apply to "computers", "mobile equipment", and the Supplemental Marine Coverages.

c.  **Contamination or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in covered property that causes it to damage or destroy itself. "We" do cover any resulting loss caused by a "specified peril" or breakage of building glass.

   However, "we" do cover loss caused by corrosion, decay, fungus, mildew, mold, rot, or rust to "computers" that results from direct physical damage by a covered peril to the air conditioning system that services "your" "computers".

d.  **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

   1)  "you";
   2)  others who have an interest in the property;

   3)  others to whom "you" entrust the property;
   4)  "your" partners, officers, directors, trustees, joint adventurers; or
   5)  the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

   This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

   This exclusion does not apply to covered property in the custody of a carrier for hire.

e.  **Defects, Errors, and Omissions** -- "We" do not pay for loss which results from one or more of the following:

   1)  an act, error, or omission (negligent or not) relating to:

      a)  land use;
      b)  the design, specification, construction, workmanship, installation, or maintenance of property;
      c)  planning, zoning, development, siting, surveying, grading, or compaction; or
      d)  maintenance of property (including land, structures, or improvements);

      whether on or off the "covered locations";

   2)  a defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair, whether on or off the "covered locations";
   3)  the cost to make good an error in design; or
   4)  a data processing error or omission in programming or giving improper instructions.

d.  weight of people or business personal property;

e.  weight of rain that collects on a roof; or

f.  the use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation.

"We" do not pay for loss to the following types of property, if otherwise covered under Commercial Output Program Coverage, under items a. through f. above, unless the loss is a direct result of the collapse of a building or structure:

outdoor awnings or canopies or their supports; fences; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves, and docks; beach or diving platforms or appurtenances; retaining walls; foundations; walks, roadways, and other paved surfaces.

2.  **Tearing Out and Replacing** -- When "we" cover buildings or structures and a loss caused by:

a.  water;

b.  other liquids;

c.  powder; or

d.  molten material

is covered, "we" also pay the cost of tearing out and replacing any part of the covered building or structure to repair damage to the system or appliance from which the water or other substance escapes.

"We" do not pay for damage to the system or appliance from which the water or other substance escapes. However, "we" pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system; or is directly caused by freezing.

# WHAT MUST BE DONE
# IN CASE OF LOSS

1.  **Notice** -- In case of a loss, "you" must:

a.  give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice);

b.  give notice to the police when the act that causes the loss is a crime; and

c.  give notice to the credit card company if the loss involves a credit card.

2.  **Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" will pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. However "we" will not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3. **Proof of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a.  the time, place, and circumstances of the loss;

   b.  other policies of insurance that may cover the loss;

   c.  "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d.  changes in title or occupancy of the covered property during the policy period;

   e.  detailed estimates for repair or replacement of covered property;

   f.  an inventory of damaged and undamaged covered property showing in detail the quantity, description, cost, actual cash value, and amount of the loss. "You" must attach to the inventory copies of all bills, receipts, and related documents that substantiate the inventory.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by the Commercial Output Program Coverages.

## VALUATION

1. **Actual Cash Value** -- When replacement cost is not shown on the "declarations" for covered property, the value of covered property will be based on the actual cash value at the time of the loss (with a deduction for depreciation) except as provided in paragraphs 3. through 9. below.

2. **Replacement Cost** -- When replacement cost is shown on the "declarations" for covered property, the value of covered property will be based on the replacement cost without any deduction for depreciation.

   The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

This replacement cost provision does not apply to paragraphs 3. through 9. below.

3.  **Fine Arts** -- The value of "fine arts" will be based on actual cash value at the time of loss (without a deduction for depreciation).

4.  **Glass** -- The value of glass will be based on the cost of safety glazing material where required by code, ordinance, or law.

5.  **Merchandise Sold** -- The value of merchandise that "you" have sold but not delivered will be based on the selling price less all discounts and unincurred expenses.

6.  **Pair or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

7.  **Loss to Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

8.  **Tenant's Improvements** -- The value of tenant's improvements losses will be based on the actual cash value if repaired or replaced at "your" expense within a reasonable time.

The value of tenant's improvements losses will be based on a portion of "your" original cost if not repaired or replaced within a reasonable time. This portion is determined as follows:

a.  divide the number of days from the date of the loss to the expiration date of the lease by the number of days from the date of installation to the expiration date of the lease; and

b.  multiply the figure determined in 8.a. above by the original cost.

If "your" lease contains a renewal option, the expiration of the lease in this procedure will be replaced by the expiration of the renewal option period.

Tenant's improvements losses are not covered if repaired or replaced at another's expense.

9.  **Valuable Papers and Records** -- The value of "valuable papers and records", including those which exist on electronic or magnetic media, is based on the cost of blank materials for reproducing the records, and the labor to transcribe or copy the records when there is a duplicate.

## HOW MUCH WE PAY

1.  **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2.  **Deductible** -- "We" pay only that part of "your" loss over the deductible amount stated on the "declarations" in any one occurrence.

The deductible applies to the loss before application of any coinsurance or reporting provisions.

3.  **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., and 5. under How Much We Pay and coinsurance provisions (if applicable), "we" pay the lesser of:

AAIS
COP-100  Ed 2.0
Page 18 of 21

a. the amount determined under Valuation;

b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

c. the "limit" that applies to covered property.

For accounts receivable, "we" will pay the lesser of:

a. the sum of all accounts receivable due (with reasonable deductions);

b. the reasonable cost to reconstruct "your" accounts receivable records; or

c. the applicable "limit".

4. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

5. **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same plan, terms, conditions, and provisions as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

If there is another policy covering the same loss, other than that described above, "we" will pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" will not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Our Options** -- "We" have the following options:

a. pay the value of the loss;

b. pay the cost of repairing or replacing the loss;

c. rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

d. take all or any part of the damaged property at the agreed or appraised value.

"We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** -- "We" will adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property of Others** -- Losses to property of others may be adjusted with and paid to:

a. "you" on behalf of the owner; or

b. the owner.

If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

In addition to the "terms" which are contained in other sections of the Commercial Output Program Coverages the following conditions apply.

1.  **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

    If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

    The appraisers will then determine and state separately the amount of each loss.

    The appraisers will also determine the value of covered property items at the time of the loss, if requested.

    If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

    Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2.  **Benefit to Others** -- Insurance under the Commercial Output Program Coverages shall not directly or indirectly benefit anyone having custody of "your" property.

3.  **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4.  **Control of Property** -- The Commercial Output Policy Coverages are not affected by any act or neglect beyond "your" control.

5.  **Death** -- If "you" die, "your" rights and duties will pass to "your" legal representative but only while acting within the scope of duties as "your" legal representative. Until "your" legal representative is appointed, anyone having proper temporary custody of "your" property will have "your" rights and duties but only with respect to that property.

6.  **Liberalization** -- If a revision of a form or endorsement which broadens Commercial Output Program Coverages without additional premium is adopted during the policy period, or within six months before this coverage is effective, the broadened coverage will apply.

7.  **Misrepresentation, Concealment, or Fraud** -- These Commercial Output Program Coverages are void as to "you" and any other insured if, before or after a loss:

    a.  "you" or any other insured have willfully concealed or misrepresented:

        1)  a material fact or circumstance that relates to this insurance or the subject thereof; or
        2)  "your" interest herein; or

    b.  there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

AAIS
COP-100  Ed 2.0
Page 20 of 21

8. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

9. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a.  "you" must notify "us" promptly if "you" recover property or receive payment.

   b.  "we" must notify "you" promptly if "we" recover property or receive payment.

   c.  any recovery expenses incurred by either are reimbursed first.

   d.  "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree.

   e.  if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on our respective interest in the loss.

10. **Restoration of Limits** -- Any loss "we" pay under the Commercial Output Program Coverages does not reduce the "limits" applying to a later loss.

11. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" will not pay for a loss if "you" impair this right to recover.

    "You" may waive "your" right to recover from others in writing before a loss occurs.

12. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

    a.  all of the "terms" of the Commercial Output Program Coverages have been complied with; and

    b.  the suit has been brought within two years after "you" first have knowledge of the loss.

       If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

13. **Territorial Limits** -- "We" cover property while in the United States of America, its territories and possessions, Canada, and Puerto Rico.

14. **Mortgage Provisions** -- If a mortgagee (mortgage holder) is named in this policy, loss to building property shall be paid to the mortgagee and "you" as their interest appears. If more than one mortgagee is named, they shall be paid in order of precedence.

    The insurance for the mortgagee continues in effect even when "your" insurance may be void because of "your" acts, neglect, or failure to comply with the coverage "terms". The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify "us".

    If "we" cancel this policy, "we" will notify the mortgagee at least ten days before the effective date of cancellation if "we" cancel for "your" nonpayment of premium, or 30 days before the effective date of cancellation if "we" cancel for any other reason.

    "We" may request payment of the premium from the mortgagee, if "you" fail to pay the premium.

    If "we" pay the mortgagee for a loss where "your" insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from "you" then belongs to "us". This does not affect the mortgagee's right to collect the remainder of the mortgage debt from "you".

As an alternative, "we" may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

If "we" choose not to renew this policy, "we" will give written notice to the mortgagee at least ten days before the expiration date of this policy.

15. **Vacancy - Unoccupancy** -- "We" do not pay for loss caused by attempted theft; breakage of building glass; sprinkler leakage (unless "you" have protected the system against freezing); theft; vandalism; or water damage occurring while the building or structure has been:

a.  vacant for more than 60 consecutive days; or

b.  unoccupied for more than:

1)  60 consecutive days; or
2)  the usual or incidental unoccupancy period for the "covered locations".

whichever is longer.

The amount "we" will pay for any loss that is not otherwise excluded will be reduced by 15%.

Unoccupied means that the customary activities or operations at the "covered location" are suspended, but business personal property has not been removed. The building or structure shall be considered vacant and not unoccupied when the occupants have moved, leaving the building or structure empty or containing only limited business personal property. Buildings or structures under construction are not considered vacant or unoccupied.

**COP-100  Ed 2.0**
Copyright MCMXCV
American Association of Insurance Services



**Fireman's Fund**

*"Producer Copy"*

THIS POLICY IS
# DIRECT BILL

## Table of Contents

POLICY NUMBER  MZI-97241415

Named Insured
**ALL STATE ASPHALT INC. ETAL.**



RECEIVED
APR 2 0 2001

Producer
**JAMES P. REAGAN AGENCY**    **Commission: 15.00%**
**P.O. BOX 191**
**MARCELLUS, NY 13108-0191**

| Document | Number Of Pages |
|---|---|
| Table of Contents | |
| COP100B 07 96 - COMMERCIAL OUTPUT POLICY - DECLARATIONS | 1 |
| IM CHANGE 12 99 - CHANGE ENDORSEMENT -  INLAND MARINE | 2 |
| SCHEDULE A | 1 |
| 135154DEC 01 83 - CONTRACTOR'S EQUIPMENT DECLARATIONS | 2 |
| 345174DEC 08 88 - INSTALLATION FLOATER DECLARATIONS | 1 |
| CM0042DEC 07 90 - COMMERCIAL FINE ARTS DECLARATIONS | 1 |
| CM7073DEC 08 89 - IM TRANSPORTATION FLOATER | 1 |
| 135154 01 83R - CONTRACTORS EQUIPMENT FORM | 1 |
| 140577 01 83R - CONTRACTORS RENTED & LEASED PROPERTY | 4 |
| 140578 01 83R - CONTRACTORS EQUIPMENT RENTAL COST REIMBURSEMENT | 2 |
| INSTALLATION FLOATER - 345174 08 88 | 2 |
| CL100 Ed. 2.0 - COMMON POLICY CONDITIONS | 4 |
| CL233 Ed. 2.0 - AMENDATORY ENDORSEMENT - MASSACHUSETTS | 1 |
| CM0042 09 00 - COMMERCIAL FINE ARTS COV FORM | 1 |
| INLAND MARINE TRANSP. FLOATER - CM7073 08 89R | 4 |
| CO0313 02 99 - AMENDATORY ENDORSEMENT - MASSACHUSETTS | 3 |
| COP100 Ed. 2.0 - COMMERCIAL OUTPUT PROGRAM -- PROPERTY COVERAGE PART | 3 |
| COP101 Ed. 2.1 - COMMERCIAL OUTPUT PROGRAM -- INCOME COVERAGE PART - TEXAS | 21 |
| COP226 Ed. 2.0 - SCHEDULED LOCATIONS ENDORSEMENT | 5 |
| COP227 Ed. 2.0 - LOCATIONS ENDORSEMENT | 1 |
| COP229 Ed. 2.1 - SUPPLEMENTAL LIMITS ENDORSEMENT | 2 |
| COP232 Ed. 2.0 - LOSS PAYABLE OPTIONS | 1 |
| COP261 Ed. 1.0 - LOSS PAYABLE SCHEDULE | 1 |
| CL140 Ed. 3.0 - AMENDATORY ENDORSEMENT - NEW YORK | 1 |
| COP313 Ed. 2.0 - AMENDATORY ENDORSEMENT - MASSACHUSETTS | 3 |

Exhibit B

**ACORD. PROPERTY LOSS NOTICE**    ALLSTA    JCM0007

| | | |
|---|---|---|
| PRODUCER (A/C, Ext) 315 677-3129 | 33302 | DATE 07/17/03 |

Reagan Agency, Inc. (Comm.)
8-12 Main Street
PO Box 191
Marcellus , NY 13108

CODE: ___ SUB CODE: ___

AGENCY CUSTOMER ID
20707

| MISCELLANEOUS INFO (Site & Location code) | DATE OF LOSS AND TIME | AM | PREVIOUSLY REPORTED |
|---|---|---|---|
| | 07/03/03  01:30 X PM | | YES X NO |

| | COMPANY AND POLICY NUMBER | NAIC CODE | POLICY DATES |
|---|---|---|---|
| PROP / HOME | CO: Fireman's F/Commercial    MCGEE | | EFF 02/01/03 |
| | POL: 01MZI97243525 | | EXP 02/01/04 |
| FLOOD | CO: | | EFF: |
| | POL: | | EXP: |
| WIND | CO: | | EFF: |
| | POL: | | EXP: |

**INSURED**

NAME AND ADDRESS OF INSURED
All States Asphalt, Inc. Etal
325 Amherst Road P.O. Box 91
Sunderland, MA 01375

RESIDENCE PHONE (A/C, No)
413 665-7021

NAME AND ADDRESS OF SPOUSE (IF APPLICABLE)

BUSINESS PHONE (A/C, No, Ext)
800 343-9620

**CONTACT**    X CONTACT INSURED

NAME AND ADDRESS OF INSURED
Alan Hankowski
Mark Gabriel

DATE OF BIRTH

SOC SEC # OR FEIN:

DATE OF BIRTH

SOC SEC # OR FEIN:

RESIDENCE PHONE (A/C, No)

WHERE TO CONTACT

BUSINESS PHONE (A/C, No, Ext)

WHEN TO CONTACT

**LOSS**

LOCATION OF LOSS 721 Waverly Street, Framingham, MA

POLICE OR FIRE DEPT TO WHICH REPORTED

| KIND OF LOSS | FIRE | LIGHTNING | FLOOD | X OTHER (Explain) Explosion | | PROBABLE AMOUNT ENTIRE LOSS |
|---|---|---|---|---|---|---|
| | THEFT | HAIL | WIND | | | |

DESCRIPTION OF LOSS & DAMAGE (Use separate sheet, if necessary)
A storage tank owned by insured suffered an explosion, which apparently
(See Attached Desc. of Loss & Damage Information.)

**POLICY INFORMATION**

NO MORTGAGE

NO MORTGAGEE

HOMEOWNER POLICIES SECTION 1 ONLY (Complete for coverage A, B, C, D & additional coverages. For Homeowners Section II Liability Losses, use ACORD 6.)

| A. DWELLING | B. OTHER STRUCTURES | C. PERSONAL PROPERTY | D. LOSS OF USE | DEDUCTIBLES | DESCRIBE ADDITIONAL COVERAGES PROVIDED |
|---|---|---|---|---|---|
| COVERAGE A. EXCLUDES WIND | | | | | ON |

FIRE 1, ALLIED LINES & MULTI-PERIL POLICIES (Complete only those items involved in loss)

| ITEM | SUBJECT OF INSURANCE | AMOUNT | % COINS | DEDUCTIBLE | COVERAGE AND/OR DESCRIPTION OF PROPERTY INSURED |
|---|---|---|---|---|---|
| 1 | X BLDG ☐ CNTS | 5,874,605 Blanket#: 1 | | 1,000 | 2121800 |
| 2 | ☐ BLDG X CNTS | 5,874,605 Blanket#: 1 | | 1,000 | 400413 |
| 3 | X | 1,650,000 Blanket#: 3 | | | 600000 |

SUBJECT TO FORMS
COL: Special (Including Theft) Valuation: Replacement Cost

| FLOOD POLICY | BUILDING: | DEDUCTIBLE: | ZONE | PRE FIRM | DIFF IN ELEV | FORM TYPE | GENERAL | CONDO |
|---|---|---|---|---|---|---|---|---|
| | CONTENTS: | DEDUCTIBLE: | | POST FIRM | | | DWELLING | |
| WIND POLICY | BUILDING | DEDUCTIBLE | CONTENTS | ZONE | GENERAL | FORM TYPE | DWELLING | CONDO |

REMARKS/OTHER INSURANCE (List companies, policy numbers, coverages & policy amounts)(NY ONLY) PREVIOUS ADDRESS OF INSURED & WIFE'S MAIDEN NAME
Please contact Insured to discuss this loss. Thank you.

(See Attached Remarks Information.)

| CAT # | REPORTED BY | ADJUSTER ASSIGNED | | ADJUSTER # | DATE ASSIGNED |
|---|---|---|---|---|---|
| REPORTED BY | | REPORTED TO Jean C. McCarthy | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER | |

ACORD 1 (2001/02) 1 of 9 #1332 NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE    JCM © ACORD CORPORATION 1986

**EXH. B**

## DESCRIPTION OF LOSS & DAMAGE (Continued from page 1.)

resulted from the spark of a welder's arc. The welder and tank were both under the sole operating control and custody of a third party, Triram, owned by the Hudson Companies of Providence, RI.

## REMARKS  (Continued from page 1)

Optional Coverage:

Coverage: Computer Equipment-Included in Total BPP limit  Limit: 100,000

COL: Special (Including Theft) Valuation: Replacement Cost  Coverage:
Building
Amount: 162,225  Deductible: 1,000  Cause of Loss: Special (Including Theft)
Valuation: Replacement Cost

Coverage: Personal Property  Amount: 193,383  Deductible: 1,000  Cause of
Loss: Special (Including Theft)  Valuation: Replacement Cost

Blanket #: 1  Blanket Limit: 5,874,605  Coverage: Building  Amount: 36,050
Deductible: 1,000  Cause of Loss: Special (Including Theft)  Valuation:
Replacement Cost

Coverage: Personal Property  Amount: 15,450  Deductible: 1,000  Cause of
Loss: Special (Including Theft)  Valuation: Replacement Cost

Coverage: Business income & extra expense  Amount: 250,000  Cause of Loss:
Special (Including Theft)  Valuation: Replacement Cost

Blanket #: 1  Blanket Limit: 5,874,605  Coverage: Building  Amount: 154,500
Deductible: 1,000  Cause of Loss: Special (Including Theft)  Valuation:
Replacement Cost

Coverage: Personal Property  Amount: 86,520  Deductible: 1,000  Cause of
Loss: Special (Including Theft)  Valuation: Replacement Cost

Coverage: Business income & extra expense  Amount: 100,000  Cause of Loss:
Special (Including Theft)  Valuation: Replacement Cost

Coverage: Building  Amount: 1,030,000  Deductible: 1,000  Cause of Loss:
Special (Including Theft)  Valuation: Replacement Cost

Coverage: Personal Property  Amount: 154,500  Deductible: 1,000  Cause of
Loss: Special (Including Theft)  Valuation: Replacement Cost

Coverage: Business income & extra expense  Amount: 250,000  Cause of Loss:
Special (Including Theft)  Valuation: Replacement Cost

Coverage: Building  Amount: 103,000  Deductible: 1,000  Cause of Loss:
Special (Including Theft)  Valuation: Replacement Cost

A WS 1.4 (2001/62)  4  of  9  #13320

JCM

# REMARKS  (Continued from page 1)

Coverage: Business Income with Extra Expense  Amount: 100,000  Deductible:
1,000  Cause of Loss: Special (Including Theft)  Valuation: Replacement Cost

Coverage: Building  Amount: 123,600  Deductible: 1,000  Cause of Loss:
Special (Including Theft)  Valuation: Replacement Cost

Coverage: Business Income with Extra Expense  Amount: 100,000  Deductible:
1,000  Cause of Loss: Special (Including Theft)  Valuation: Replacement Cost

Blanket #: 1  Blanket Limit: 5,874,605  Coverage: Building  Amount: 83,430
Deductible: 1,000  Cause of Loss: Special (Including Theft)  Valuation:
Replacement Cost

Coverage: Business income & extra expense  Amount: 250,000  Cause of Loss:
Special (Including Theft)  Valuation: Replacement Cost

Blanket #: 1  Blanket Limit: 5,874,605  Coverage: Building  Amount: 1,287,500
Deductible: 1,000  Cause of Loss: Special (Including Theft)  Valuation:
Replacement Cost

Coverage: Building  Amount: 257,500  Deductible: 1,000  Cause of Loss:
Special (Including Theft)  Valuation: Replacement Cost

Blanket #: 1  Blanket Limit: 5,874,605  Coverage: Building  Amount: 515,000
Deductible: 1,000  Cause of Loss: Special (Including Theft)  Valuation:
Replacement Cost

* Continued from Fire, Allied Lines Section *

  Item: 1  Desc: Cat RM350  Amount: 100,000  Ded: 1,000

  Item: 2  Desc: Cat RM350  Amount: 150,000  Ded: 1,000

  Item: 3  Desc: Cat RM350B  Amount: 175,000  Ded: 1,000

  Item: 4  Desc: Cat Grader  Amount: 7,500  Ded: 1,000

  Item: 5  Desc: Clark  Amount: 7,500  Ded: 1,000

  Item: 6  Desc: Allis Chalmers  Amount: 10,000  Ded: 1,000

  Item: 7  Desc: Bobcat/743 Skidsteer  Amount: 10,000  Ded: 1,000

  Item: 8  Desc: Power Broom  Amount: 5,000  Ded: 1,000

  Item: 9  Desc: Clark New Forklift  Amount: 15,000  Ded: 1,000

  Item: 10  Desc: Hyster/C625  Amount: 20,000  Ded: 1,000

A143 1.4 (2001/02)  5  of 9  #13320                                        JCM

## REMARKS (Continued from page 1)

Item: 11  Desc: C850  Amount: 35,000  Ded: 1,000

Item: 12  Desc: C625C  Amount: 20,000  Ded: 1,000

Item: 13  Desc: CB850  Amount: 40,000  Ded: 1,000

Item: 14  Desc: Cat Roller  Amount: 60,000  Ded: 1,000

Item: 15  Desc: JD544AD  Amount: 10,000  Ded: 1,000

Item: 16  Desc: JD644B  Amount: 20,000  Ded: 1,000

Item: 17  Desc: JD644D  Amount: 40,000  Ded: 1,000

Item: 18  Desc: JD644C  Amount: 25,000  Ded: 1,000

Item: 19  Desc: Trojan  Amount: 10,000  Ded: 1,000

Item: 20  Desc: Cat 960F  Amount: 150,000  Ded: 1,000

Item: 21  Desc: JD644D  Amount: 40,000  Ded: 1,000

Item: 22  Desc: Hyster C340B  Amount: 10,000  Ded: 1,000

Item: 23  Desc: Econ Roller  Amount: 1,000  Ded: 1,000

Item: 24  Desc: Gallion  Amount: 1,000  Ded: 1,000

Item: 25  Desc: CS563C Roller  Amount: 75,000  Ded: 1,000

Item: 26  Desc: Cat Roller  Amount: 80,000  Ded: 1,000

Item: 27  Desc: Caterpillar  Amount: 50,000  Ded: 1,000

Item: 28  Desc: Dynapac/CA15R135  Amount: 10,000  Ded: 1,000

Item: 29  Desc: Cat S534B  Amount: 75,000  Ded: 1,000

Item: 30  Desc: Cat Roller  Amount: 75,000  Ded: 1,000

Item: 31  Desc: Cat Roller  Amount: 75,000  Ded: 1,000

Item: 32  Desc: Bomag BW120AD  Amount: 10,000  Ded: 1,000

Item: 33  Desc: Cat roller  Amount: 75,000  Ded: 1,000

Item: 34  Desc: Layton  Amount: 2,500  Ded: 1,000

Item: 35  Desc: Layton  Amount: 2,500  Ded: 1,000

Item: 36  Desc: Rex Mix Paver  Amount: 5,000  Ded: 1,000

Item: 37  Desc: BG245  Amount: 75,000  Ded: 1,000

Item: 38  Desc: Midland Nova Chip  Amount: 450,000  Ded: 1,000

Item: 39  Desc: Cat Paver  Amount: 125,000  Ded: 1,000

## REMARKS  (Continued from page 1)

Item: 40   Desc: Etnyre   Amount: 25,000   Ded: 1,000

Item: 41   Desc: Flaherty/JPRH   Amount: 20,000   Ded: 1,000

Item: 42   Desc: Etnyre   Amount: 25,000   Ded: 1,000

Item: 43   Desc: Etnyre   Amount: 50,000   Ded: 1,000

Item: 44   Desc: Etnyre   Amount: 50,000   Ded: 1,000

Item: 45   Desc: Etnyre   Amount: 45,000   Ded: 1,000

Item: 46   Desc: Etnyre   Amount: 75,000   Ded: 1,000

Item: 47   Desc: Hyster/C530   Amount: 15,000   Ded: 1,000

Item: 48   Desc: Hyster/C530   Amount: 15,000   Ded: 1,000

Item: 49   Desc: Hyster   Amount: 15,000   Ded: 1,000

Item: 50   Desc: Hyser/C530   Amount: 15,000   Ded: 1,000

Item: 51   Desc: Hyster/C530   Amount: 15,000   Ded: 1,000

Item: 52   Desc: Hyster/C530A   Amount: 15,000   Ded: 1,000

Item: 53   Desc: Bros   Amount: 15,000   Ded: 1,000

Item: 54   Desc: Hyster   Amount: 15,000   Ded: 1,000

Item: 55   Desc: Reed 8042-A Tag/Mix   Amount: 35,000   Ded: 1,000

Item: 56   Desc: Cleaver/Brooks Hater/Retort   Amount: 5,000   Ded: 1,000

Item: 57   Desc: Rubber Blender   Amount: 100,000   Ded: 1,000

Item: 58   Desc: Portable Heater Tank   Amount: 150,000   Ded: 1,000

Item: 59   Desc: Asphalt Plant at 127 Attawaugan Crossing Rd, Danville, Ct
Amount: 888,889   Ded: 2,500

Item: 60   Desc: Cat 966G   Amount: 200,000   Ded: 1,000

Item: 61   Desc: Caterpillar Road Reclaimer   Amount: 300,000   Ded: 1,000

Item: 62   Desc: Fiat - Allis   Amount: 15,000   Ded: 1,000

Item: 63   Desc: TE Rex   Amount: 30,000   Ded: 1,000

Item: 64   Desc: Michigan   Amount: 5,000   Ded: 1,000

Item: 65   Desc: CAt   Amount: 35,000   Ded: 1,000

Item: 66   Desc: Roscoe   Amount: 5,000   Ded: 1,000

Item: 67   Desc: Barber Greene   Amount: 5,000   Ded: 1,000

AK 1.4 (2001/02)  7  of 9  #13320                                        JCM

Exhibit C

# ALL STATES
# ASPHALT, Inc.  P.O. BOX 91 SUNDERLAND, MA 01375 (413) 665-7021

November 15, 2004

Fireman's Fund Insurance Company
75 Wall Street
18th Floor
NY, NY 10005                                    via Certified Mail, RRR

Attn: Thomas Burch

Re:  Demand for payment and Notice of Suit          Policy # MZ1-97241415

Dear Mr. Burch,

I am general counsel for your insured, All States Asphalt, Inc., ("ASA"), regarding its
rights against Fireman's Fund Insurance Company, ("Fireman's"), upon the above Policy
of insurance in its favor, arising out of an insured property damage loss suffered by its
insured affiliate New England Emulsions Corp., ("NEE"), on or about July 3, 2003. Both
ASA and NEE are hereinafter collectively referred to as "Insureds."

A Property Loss Notice, ("Notice"), concerning this insured casualty was timely tendered
to Fireman's on, or about, July 17, 2003, by the writing agent, Reagan Agency, at the
direction of the Insureds.  A copy thereof is annexed hereto, as **Exhibit A.**

Since submission of the Notice, the Insureds have diligently and continuously sought a
response from Fireman's as to whether further information was required in consideration
of its claim, as well as whether coverage would be accepted and payment made, or
insurability declined for specified reasons permitted by the Policy; all as required by the
Policy, but to no avail.

In recent weeks, and in response to intensified efforts by the writing agent, anecdotal
information has been received as to a unacceptably belated potential declination to be
forthcoming, however, despite the Policy's requirement that it either timely require a
sworn Proof of Loss, or otherwise timely reject the claim for cause shown,  it has done
neither, leaving only silence from Fireman's, for a period in excess of sixteen (16)
months, in   clear and unambiguous derogation of both the Policy, as well as
*Massachusetts General Laws, Chapters 176D and 93A.*

In my client's view of applicable law to the issue, the mere happening of Fireman's
abject and indefensible failure to act on the Notice, as well as its total failure to respond

to the follow-up pleas from the Insureds' writing agent as required by the Policy, warrant imposition of compensatory damages, punitive treble damages, and attorneys fees; without even having to now address, at this extraordinarily late hour, the inclusion of the claim, itself, within Policy parameters, as such right has long-since been legally forfeited by Fireman's willful and unpermitted unfair claims settlement practice.

Not at all parenthetically, your Insureds have always believed that they remained fully entitled to full coverage for the loss delineated in the Notice, in any event.

Please refer this letter to your counsel at this time, in the event full payment of the loss, with interest equal to that being incurred by our client since date of the loss, is not to be tendered, without further delay, as suit will shortly be commenced in furtherance of these particulars. Your counsel should also advise if that office would accept service of process for the USDC Summons to otherwise be served upon your Massachusetts Resident Agent. My direct phone line is 413-478-3450, if counsel should wish to call me.

Any belated denial of coverage issuing contemporaneously herewith will be at Fireman's further legal peril, as it will only further demonstrate both its lack of good faith, as well as provide cogent and unambiguous further evidence of a continuum of its unfair claims settlement practices.

Moreover, should Fireman's belatedly now request a sworn Proof of Claim pursuant to the Policy, any response by your Insureds will at all times remain "without prejudice" as to all rights inuring to them by virtue of the legally unpermitted failures addressed above.

Finally, and as the Policy direct this advice be sent to your non-existent World Trade center address, I am addressing you as the "contact" identified by the writing agent, with a copy also being sent to Fireman's headquarters, to assure timely and appropriate receipt.

Yours truly,

Irving D. Labovitz, Esq.
General Counsel

Enclosure


CC:    Insureds; Reagan Agency
       Fireman's Fund Insurance Company
       7177 San Marin Drive
       Novato, CA 94998                    via cert. mail, RRR

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X **M. TALLENT**    ☐ Agent    ☐ Addressee

B. Received by (Printed Name)    NOV 1 8 2004    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

FiReMans Fund / INSG
9177 San Marin Dr
Novato, Ca
  94998

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from se:    E006 8445 2000 0752 4002

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X  Susan ___    ☐ Agent    ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery  12/2/04

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

FiReMans Fund INS Co
75 Wall St
18th Floor
N Y, NY 10005

att. i + R

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Arti
(Tra

PS Fo    102595-02-M-1540

Exhibit D

JAN. 13. 2005  9:20AM    FIREMEN-FUND                              NO. 703    P. 2



**MOHAWK VALLEY CLAIMS SERVICE, INC.**
2041 GENESEE STREET • UTICA, NEW YORK 13501

PHONE 315-792-4660    FAX PHONE 315-792-4659

*All States Asphalt, Inc.*
*325 Amherst Road*
*P. O. Box 91*
*Sunderland, MA. 01375*

*Attn: Mark Gabriel*

*Ref:*
*· MVCS Policy #: MZI97243525*
*Date of Loss: 07/03/03*

*Dear Mr. Gabriel:*

*We acknowledge receipt of your claim for the asphalt holding tank which was destroyed as a result of an explosion at a Framingham, MA. location. This loss occurred on 07/03/03.*

*We have now completed our investigation and the facts we found were as follows: (1.) that the tank in question was listed as scheduled property at your Holliston, MA. location. (2.) that the tank in question was moved to a location in Framingham, MA., being leased by Triram Corporation. (3.) the Triram Corporation which has an affiliation with the Hudson Companies arranged to have the tank installed at the Framingham MA. location. One Christopher Lyon was given the sub-contract to perform the installation. During said installation the tank exploded.*

*Your claim was for the physical damage to said tank and in researching the policy we noted that the tank was removed from its location where it was insured to a location that was not property of All States Asphalt. Thus, the tank was uninsured at that location.*

*We further looked into the Installation Floater to determine whether there would be any coverage under that Form and we found that the installation was being performed by the Triram Corporation and not by All States Asphalt.*

*Therefore, for this and for any other reason that may appear, Fireman's Fund respectfully denies any coverage for this loss.*

*Should you have any questions regarding this matter please feel free to call upon or correspond with the undersigned.*

*Very truly yours,*

*FRANK J. PINNISI*
*ADJUSTER*
*FJP/pmf*

**EXH. D**

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS
All States Asphalt, Inc. and
New England Emulsions Corp.

**DEFENDANTS**
Fireman's Fund Insurance Company

(b) County of Residence of First Listed Plaintiff **Franklin**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      (U.S. Government Not a Party)

☐ 2  U.S. Government
      Defendant

☒ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability | ☐ 690 Other | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle |  |  | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other |  |  |
|  | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights |  |  |
|  |  | ☐ 555 Prison Condition |  |  |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332
Brief description of cause: **Failure of insurer to respond to or pay casualty claim.**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 123,500.00   CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
**N/A**   (See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  Jan 21, 2005
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)  **All States Asphalt, Inc., et al vs. Fireman's Fund Insurance Company**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

   [ ]  I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ]  II.     195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

   [X]  III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

   [ ]  IV.     220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

   [ ]  V.      150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____N/A_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                            YES [ ]    NO  [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                                            YES [ ]    NO  [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                            YES [ ]    NO  [X]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                            YES [ ]    NO  [X]

7. Do **all** of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                            YES [X]    NO  [ ]

   A.   If yes, in which division do **all** of the non-governmental parties reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [X]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                            YES [ ]    NO  [X]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   **Paul H. Rothschild**

ADDRESS   **Bacon & Wilson, P.C., 33 State St., Spfld., MA 01103**

TELEPHONE NO.   **(413) 7810560**

(Coversheetlocal.wpd - 10/17/02)